UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHICAGO BRIDGE & IRON COMPANY N.V. and CB&I UK LIMITED,<br><br>                              Petitioners<br><br>v.<br><br>REFINERÍA DE CARTAGENA S.A.S.,<br><br>                              Respondent<br><br>v.<br><br>CBI COLOMBIANA S.A.<br><br>                              Cross-Respondent | Civil Action No. 1:23-cv-04825-GHW |

**RESPONDENT'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY ORDER TO SHOW CAUSE FOR (1) PREJUDGMENT
ATTACHMENT ORDER AND (2) DISCLOSURE OF PETITIONERS' ASSETS**

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND .................................................................................................................... 3

    A.    The Arbitration and Award ................................................................... 3

    B.    The Pending Petitions in This Court ..................................................... 7

    C.    CB&I's New Declared Objective to Avoid Payment of the Award
        Through the Foreign Restructuring Proceedings ................................... 7

    D.    Overview of the Foreign Restructuring Proceedings ............................ 9

ARGUMENT ....................................................................................................................... 11

    A.    Reficar is Entitled to Prejudgment Attachment Under CPLR §§ 6201 and
        6212 ..................................................................................................... 12

        1.    Reficar Has a Cause of Action ................................................. 13

        2.    Reficar Will Likely Succeed on the Merits of Its Claim ........... 13

        3.    CB&I N.V. and CB&I UK Are Foreign Corporations Not
            Authorized to Do Business in New York ................................... 15

        4.    CB&I N.V. and CB&I UK Do Not Allege Any Counterclaims .............. 16

        5.    An Attachment Is Necessary as Security for Payment of the
            Expected Judgment ................................................................... 16

    B.    Reficar Should Be Required to Post Only a Minimal Undertaking ..................... 19

    C.    The Court Should Order Disclosure of CB&I N.V. and CB&I UK's
        Worldwide Assets Pursuant to CPLR § 6220 ....................................... 19

    D.    Conclusion ........................................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*,
    No. 22-CV-5136 (JGK), 2022 WL 2916577 (S.D.N.Y. July 25, 2022) ...............................15

*In re Amaranth Nat. Gas Commodities Litig.*,
    711 F. Supp. 2d 301 (S.D.N.Y. 2010) ..............................................................................12, 15

*BSH Hausgerate, GmbH v. Kamhi*,
    282 F. Supp. 3d 668 (S.D.N.Y. 2017) .....................................................................................12

*Cap. Ventures Int'l v. Republic of Argentina*,
    443 F.3d 214 (2d Cir. 2006) ................................................................................................12, 13

*Considar, Inc. v. Redi Corp. Establishment*,
    655 N.Y.S.2d 40 (1st Dep't 1997) ............................................................................................13

*D.H. Blair & Co. v. Gottdiener*,
    462 F.3d 95 (2d Cir. 2006) ........................................................................................................14

*Florasynth, Inc. v. Pickholz*,
    750 F.2d 171 (2d Cir. 1984) ......................................................................................................13

*Herzi v. Ateliers De La Haute-Garonne*,
    No. 15–cv–7702 (RJS), 2015 WL 8479676 (S.D.N.Y. Oct. 13, 2015) ...................................17

*Hotel 71 Mezz Lender LLC v. Falor*,
    14 N.Y.3d 303, 926 N.E.2d 1202, 900 N.Y.S.2d 698 (2010) ..................................................18

*ITG Ent. Ltd. v. Nelson Film Partners*,
    714 F.2d 217 (2d Cir. 1983) ......................................................................................................17

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
    306 F. Supp. 2d 482 (S.D.N.Y. 2004) ......................................................................................14

*JSC VTB Bank v. Mavlyanov*,
    154 A.D.3d 560 (1st Dep't 2017) ..............................................................................................18

*Landy Michaels Realty Corp. v. Loc. 32 B-32J, Serv. Emps. Int'l Union, AFL-
CIO*,
    954 F.2d 794 (2d Cir. 1992) ......................................................................................................14

*Loew v. Kolb*,
    No. 03 Civ. 5064 (RCC), 2003 WL 22077454 (S.D.N.Y. Sept. 8, 2003) ...............................15

*Lumbard v. Shasha*,
No. 84Civ 0009 (JFK), 1985 U.S. Dist. LEXIS 12243 (S.D.N.Y. Dec. 30, 1985) ................................................................................................................20

*Martropico Compania Naviera S.A. v. Perushahaan Pertambangan Minyak Dan Gas Bumi Negara*,
396 N.Y.S.2d 410 (1st Dep't 1977) ......................................................................20

*Michelsen v. Brush*,
233 F. Supp. 868 (E.D.N.Y. 1964) .......................................................................19

*Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*,
No. 11 CIV. 04971 RJH, 2011 WL 6957595 (S.D.N.Y. Dec. 28, 2011) ..............18

*N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.*,
No. 07 CIV 8008 (RJS), 2008 WL 2115225 (S.D.N.Y. May 16, 2008) ................13

*Onewoo Corp. v. Hampshire Brands, Inc.*,
No. 16-CV-4623 (PKC), 2016 WL 11779677 (S.D.N.Y. Nov. 15, 2016) .............18

*Parbulk II AS v. Heritage Mar., SA*,
35 Misc. 3d 235, 935 N.Y.S.2d 829 (N.Y. Sup. Ct. 2011), amended sub nom.
*Parbulk II as v. Mar.* (N.Y. Sup. Ct. 2011) .......................................................18

*Royal Bank & Trust Co. v. Vermes*,
Case No. 85-civ-6944 (JFK), 1986 U.S. Dist. LEXIS 26484 (S.D.N.Y. Apr. 21, 1986) ..............................................................................................................20

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co. Ltd..*,
57 F.4th 372 (2d Cir. 2023) ..................................................................................14

*Thornapple Assocs., Inc. v. Sahagen*,
No. 06 Civ. 6412 (JFK), 2007 WL 747861 (S.D.N.Y. Mar. 12, 2007) ................13

*VisionChina Media Inc. v. S'holder Representative Servs., LLC*,
109 A.D.3d 49, 967 N.Y.S.2d 338 (1st Dept. 2013) .............................................16

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,
811 F.3d 584 (2d Cir. 2016) ..................................................................................14

**Statutes**

9 U.S.C. § 9 .................................................................................................................11

Federal Arbitration Act ..............................................................................................13

**Other Authorities**

CPLR Article 62 ........................................................................................................15

CPLR § 5225 ................................................................................................................16

CPLR § 6201 ........................................................................................................1, 10, 13

CPLR § 6201(1) ............................................................................................................13

CPLR § 6202 ..........................................................................................................10, 15

CPLR § 6212 ........................................................................................1, 10, 11, 12, 13

CPLR § 6212(a) ....................................................................................10, 11, 12, 13

CPLR §§ 6214-6216 ......................................................................................................16

CPLR § 6220 ........................................................................................................1, 16, 17

Fed. R. Civ. P. 64 ..........................................................................................................9

Respondent Refinería de Cartagena S.A.S., f/k/a Refinería de Cartagena S.A. ("Reficar"), submits this memorandum of law in support of its motion by order to show cause for: (1) an order of prejudgment attachment against the United States property of (i) Petitioner McDermott International Holdings B.V., f/k/a Comet II B.V., f/k/a Chicago Bridge & Iron Company N.V. ("CB&I N.V.") and (ii) Petitioner CB&I UK Limited ("CB&I UK," and together with CB&I N.V., "CB&I"), pursuant to New York Civil Practice Law and Rules ("CPLR") §§ 6201 and 6212; and (2) disclosure of CB&I N.V. and CB&I UK's worldwide assets pursuant to CPLR § 6220.[1]

## INTRODUCTION

On June 8, 2023, CB&I initiated this case through its petition to vacate an arbitral award dated June 2, 2023 (the "Award") in favor of Reficar and in the amount of $ 937,495,061 (not including interest and costs). ECF No. 1. Reficar filed a cross-petition to confirm the Award, ECF No. 38, and this Court issued a briefing schedule for the dueling petitions, ECF No. 33. Pursuant to the briefing schedule, CB&I filed its final submission on August 31, 2023, ECF No. 52, and Reficar's final submission was filed on September 22, 2023.

Notwithstanding these ongoing proceedings, on September 8, 2023, CB&I's parent company — McDermott International, Inc. ("McDermott") — issued a press release disclosing that CB&I N.V. and CB&I UK intended to file restructuring proceedings in the Netherlands and England, respectively (the "Foreign Restructuring Proceedings"), for the express purpose of "discharg[ing]" the "arbitration decision issued by the International Chamber of Commerce ("ICC") in favor of Reficar[.]" On the same date, CB&I UK initiated restructuring proceedings in England under Part 26A of the Companies Act 2006 (UK), and CB&I N.V. initiated restructuring

---

[1]    As explained below, Reficar seeks an attachment of CB&I's property in the United States, except for any <u>real</u> property located outside New York State.

proceedings in the Netherlands under the Dutch Act on Confirmation of Extrajudicial Plans (*Wet Homologatie Onderhands Akkoord* or "WHOA"). CB&I seeks in the Foreign Restructuring Proceedings to discharge its debt under the Award, in order to impede Reficar's ability to collect on this Court's expected judgment confirming the Award.

CB&I's foreign filings are not normal reorganization proceedings. Their express purpose is to target and eliminate CB&I's debt under the Award, as well as a Colombian regulatory order related to the same construction project. CB&I proposes that the equity holders will be completely unimpaired and that all other lenders and creditors will be paid in full. Only Reficar's claim under the Award will be wiped out if CB&I's gambit succeeds as planned.

Moreover, CB&I and McDermott seek an extraordinarily expeditious resolution of the Foreign Restructuring Proceedings. According to a so-called "Practice Statement Letter" issued by CB&I UK to its creditors on September 8, 2023, CB&I UK expects the "Sanction Hearing," at which the English court will be asked to approve CB&I UK's proposed restructuring plan, to be held on **November 10, 2023**. Likewise, McDermott stated in its press release of September 8, 2023 that "[f]ollowing completion of the Netherlands and UK processes, [it] will make a voluntary filing in the United States to secure legal recognition of the international court decisions" and that it "expects to complete the processes no later than early 2024."

Given the imminent threat posed by CB&I's foreign "restructuring" gambit, Reficar brings this motion by Order to Show Cause to prevent CB&I from removing assets from this Court's jurisdiction prior to confirmation of the Award.[2] Reficar respectfully requests that this Court set a "show cause" hearing on the present motion for prejudgment attachment in early to mid-October,

---

[2]   As explained below and in the accompanying declarations of Reficar's Dutch and English counsel, there is no automatic stay of creditor actions against CB&I N.V. and CB&I UK during the pendency of the Foreign Restructuring Proceedings.

2023. Through the present motion, Reficar seeks the following relief: (i) an order of prejudgment attachment of CB&I's property in the United States (except for any real property located outside New York State) pursuant to CPLR §§ 6201 and 6212, in order to secure CB&I's payment of this Court's expected judgment confirming the Award; and (ii) an order pursuant to CPLR § 6220 requiring CB&I to disclose its worldwide assets. As explained below, Reficar meets each of the statutory requirements for such relief under New York law.

## BACKGROUND

### A.     The Arbitration and Award

The Award that CB&I originally sought to vacate in this Court — and now separately to "discharge" through the Foreign Restructuring Proceedings — arose from CB&I's bad-faith and profit-driven misconduct on a construction project in Colombia.[3]

In 2007, seeking to expand and modernize the refinery it owned in Cartagena, Colombia, Reficar awarded CB&I an initial contract for process design and basic engineering for the project on the basis of CB&I's promise to perform the subsequent engineering, procurement, and construction ("EPC") on a lump-sum, turnkey basis and the parties' agreement that CB&I would bear the risk of any cost overruns. ECF No. 39-1, ¶¶ 239, 244–49. In spring 2008, however, CB&I requested to move the expected EPC contract to a cost-reimbursable basis. *Id.*, ¶¶ 249–251. To convince Reficar to agree to the proposed change, CB&I provided two cost estimates with a +/- 10% accuracy margin for subsequent EPC work: (1) a July 2009 estimate for $ 3.495 billion, and (2) a February 2010 estimate for $ 3.149 billion. *See id.* ¶¶ 255–60.

---

[3]   The relevant facts relating to the arbitration and the Award are further detailed in Reficar's Petition to Confirm Arbitration Award, ECF No. 38-1, and Reficar's Memorandum of Law in Opposition to Petition to Vacate and in Support of Cross-Petition to Confirm, ECF No. 37.

In June 2010, Reficar and CB&I entered into six interrelated agreements (collectively known as the "EPC Agreement"), by which CB&I agreed to perform the engineering, procurement, and construction for the expansion of Reficar's refinery.[4] ECF Nos. 37, at 4; 39-1, at 18. Per CB&I's request, the EPC Agreement reflected a cost-reimbursable structure. In return, the EPC Agreement included several provisions designed to protect Reficar from cost overruns. *See* ECF No. 39-1, ¶¶ 265–267, 427–28, 465–66. 1533–34. For example, CB&I agreed to "rigorously control cost and schedule similar to a lump sum contract, safeguarding Reficar resources as if their own." *Id.* ¶¶ 265, 427–28.

After the parties signed the EPC Agreement in June 2010, CB&I repeatedly violated its core contractual obligations, leading to enormous cost overruns and a significant delay in the project's completion. In August 2011, CB&I revealed that its EPC costs forecast had increased significantly from approximately $ 3.2 billion to $ 3.641 billion. *Id.* ¶¶ 271–72. In December 2011, CB&I again increased the forecast to $ 3.809 billion, only to increase it a third time in January 2012 to $ 3.971 billion. *Id.*

Frustrated by CB&I's consistent failure to adhere to its cost-control obligations, Reficar threatened to hire a replacement contractor. *Id.* ¶ 274. In response, CB&I certified in a May 2012 letter that its $ 3.971 billion forecast met the highest accuracy requirements of the industry. *Id.* ¶¶ 275–276. By that time, CB&I had been performing the EPC work for around two years, and just nine months remained before the guaranteed completion date of February 2013.

---

[4]    Cross-Respondent CBI Colombiana S.A., an affiliate of CB&I N.V. and CB&I UK, was also a party to the EPC Agreement and a respondent in the arbitration. While CBI Colombiana S.A. is a cross-respondent in the confirmation proceedings pending before this Court, the present motion does not seek an order of attachment against the property of CBI Colombiana S.A. Upon information and belief, CBI Colombiana S.A. was liquidated under the laws of Colombia due to insolvency in June 2020. ECF Nos. 38-1, ¶ 17; 39-1, at 12.

CB&I's reckless behavior, however, remained unchanged, and costs continued to balloon. Ultimately, CB&I was over two years late in meeting its construction deadlines and Reficar paid $ 5.908.2 billion in EPC costs — approximately $ 2.750 billion more than CB&I represented in its February 2010 estimate. *Id.* ¶ 280. That was no accident. As CB&I's Operations Manager testified, "the view of CB&I was that the longer the job went on, the more money CB&I would make." *Id.* ¶ 936. In other words, CB&I prioritized its own profit margins over its express contractual obligation to control costs, as the arbitral tribunal later found. *Id.* ¶¶ 931–36, 2205-15.

In light of CB&I's intentional disregard of its obligations to control costs and to meet the guaranteed completion date, Reficar initiated an arbitration against CB&I in March 2016 claiming breaches of the EPC Agreement. Pursuant to the parties' Dispute Resolution Agreement, the arbitration was initiated under the Rules of Arbitration of the International Chamber of Commerce ("ICC"), and the seat of the arbitration was New York, New York. ECF No. 39-1, ¶¶ 27–28. In May 2016, CB&I responded to Reficar's claims and asserted counterclaims. *Id.* ¶ 35.

The arbitral tribunal was composed of three eminently qualified international lawyers: Professor Juan Fernández-Armesto of Spain (Chairman), the former President of the Spanish SEC who has been an arbitrator in more than 180 proceedings; Professor Andrés Jana of Chile, the current Vice President of the International Court of Arbitration of the ICC; and Sir Vivian Ramsey of England, the former presiding judge of the Technology and Construction Court.

The arbitration lasted seven years, and the parties submitted over 6,000 factual exhibits, over 1500 legal exhibits, the testimony of dozens of fact witnesses, nearly 30 expert reports, 11 joint expert reports, and 25 pleadings. *Id.* ¶¶ 122–131. The merits hearing was delayed in 2020 on account of CB&I's bankruptcy. Specifically, on January 21, 2020, McDermott (the parent company of CB&I) and numerous subsidiaries of McDermott (including CB&I N.V. and CB&I

UK) filed bankruptcy petitions in the U.S. Bankruptcy Court for the Southern District of Texas under Chapter 11 of the U.S. Bankruptcy Code. *See* ECF No. 37, at 13; Stenglein Decl., ¶ 6.

On June 30, 2020, McDermott and its subsidiaries (including CB&I N.V. and CB&I UK) emerged from Chapter 11 bankruptcy with Reficar's claims against CB&I expressly preserved. Stenglein Decl., ¶ 6. Subsequently, the arbitration tribunal held the merits hearing over the course of six weeks in 2021. *See* ECF No. 39-1, *¶* 113.

On June 2, 2023, the arbitral tribunal unanimously issued the Award. Consisting of 480 pages of factual findings and careful legal analysis, the Award included a 118-paragraph summary of the procedural history, *id.* ¶¶ 23–140; a 50-paragraph choice-of-law analysis, *id.* ¶¶ 187–236; a 50-paragraph summary of the facts, *id.* ¶¶ 237–86; a 522-paragraph analysis of Reficar's pre-contract claims that finds in favor of CB&I, *id.* ¶¶ 304–825; a 537-paragraph analysis of Reficar's contractual claims that finds in favor of both parties in part, *id.* ¶¶ 828–1364; a 165-paragraph analysis of CB&I's counterclaims that also finds in favor of both parties in part, *id.* ¶¶ 1365–1529; a 196-paragraph delay analysis that finds in favor of both parties in part, *id.* ¶¶ 1530–1725; a 56-paragraph analysis of lost profits that finds in favor of CB&I, *id.* ¶¶ 2021–76; and a 188-paragraph analysis of the applicability of the contractual liability cap that finds in favor of Reficar, *id.* ¶¶ 2083–2270.

The tribunal determined that CB&I acted with profit-motivated, reckless disregard to Reficar's rights and that this behavior rose at least to the level of *culpa grave* under Colombian law and gross negligence under New York law. As a result, the tribunal ordered "(i) CB&I UK, CBI Colombiana and CB&I N.V. to pay jointly and severally to Reficar USD 937,495,061 and (ii) Reficar to pay COP 28,256,049 to CBI Colombiana." ECF No. 39-1, ¶ 2500(11). The tribunal further ordered "CB&I UK, CB&I N.V. and CBI Colombiana to pay jointly and severally to

Reficar an award on costs of USD 58,659,079," and it ordered the parties to pay interest on all amounts due in accordance with the tribunal's instructions. ECF No. 39-1, ¶ 2500(13–14).

**B.      The Pending Petitions in This Court**

As New York was the seat of the arbitration, CB&I filed a petition to vacate the Award with this Court on June 8, 2013. ECF No. 1. CB&I's petition did not allege any fraud or bias on the part of the distinguished tribunal, but instead complained about several of the tribunal's procedural rulings and legal determinations. *Id.* On August 4, 2023, Reficar filed a cross-petition to confirm the Award. ECF No. 38. Reficar's supporting memorandum explained that none of CB&I's purported grounds for vacatur satisfied the high standard for vacating an arbitral award. ECF No. 37. On August 31, 2023, CB&I filed its reply memorandum, which abandoned some of its prior arguments and improperly added new arguments. ECF No. 52. Reficar made its final written submission on September 22, 2023, and the two petitions are now ready for this Court's decision.

**C.      CB&I's New Declared Objective to Avoid Payment of the Award Through the Foreign Restructuring Proceedings**

CB&I is now seeking to undermine this Court's authority and escape the Award issued by the tribunal without regard to this Court's rulings.

On September 8, 2023, McDermott publicly announced in a press release that: (i) CB&I N.V. and Lealand Finance Company B.V. ("Lealand") would initiate restructuring procedures in the Netherlands under the Dutch Act on Confirmation of Extrajudicial Plans (*Wet Homologatie Onderhands Akkoord* or "WHOA"); and (ii) CB&I UK would initiate a Restructuring Plan under Part 26A of the Companies Act 2006 (UK) in England. Stenglein Decl., ¶ 3, Ex. 1. As explained in the accompanying declarations of Reficar's Dutch and English counsel, a company cannot restructure its debts under these procedures unless it has encountered (or is likely to encounter)

financial difficulties that are affecting its ability to continue as a going concern (in England) (Schumann Decl., ¶ 4), or where there is no realistic prospect that it can continue to pay its debts (in the Netherlands) (van den Berg Decl., ¶ 3).

McDermott's September 8, 2023 press release states that "[f]ollowing the completion of the Netherlands and UK processes, McDermott will make a voluntary filing in the United States to secure legal recognition of the international court decisions," and that McDermott "currently expects to complete the processes no later than early 2024." Stenglein Decl., ¶4, Ex. 1. The press release also addresses the Award and the proceedings related to the Award that are currently pending before this Court. It states that McDermott "strongly disagrees with the Award" and that a principal purpose of the Foreign Restructuring Proceedings is to avoid payment of the Award by "discharg[ing]" Reficar's claims against CB&I N.V. and CB&I UK based upon the Award. *Id.*

On the same date as McDermott's press release (*i.e.*, September 8, 2023), CB&I UK initiated a court-supervised voluntary restructuring proceeding in the High Court of Justice of England and Wales under Part 26A of the Companies Act 2006, and it sent a so-called "Practice Statement Letter" to its creditors. Schumann Decl. ¶ 7, Ex. 1. CB&I UK's Practice Statement Letter indicated that CB&I N.V. and Lealand intended to initiate similar proceedings in the Amsterdam District Court in the Netherlands under the WHOA. *Id.* ¶ 7, Ex. 1, ¶ 6.6. On September 21, 2023, Reficar was informed that CB&I N.V. and Lealand have initiated the WHOA proceedings by means of filing the declaration (*startverklaring*) as described in Article 370(3) of the Dutch Bankruptcy Act. van den Berg Decl. ¶ 5.

Under CB&I UK's proposed Restructuring Plan (the key terms of which are described in CB&I UK's Practice Statement Letter), Reficar, which is by far the largest unsecured creditor of CB&I, will receive a maximum payment of approximately $ 2.5 million over two years, and its

claim under the Award, with a total current value well above $ 1 billion, will be released in full. Schumann Decl. ¶ 8, Ex. 1, ¶¶ 8.4, 10.7-10.11. By contrast, CB&I's equity holders will be completely unimpaired and all other lenders and creditors will be paid in full. *Id.* ¶¶ 8, 10.1-10.6.

According to CB&I UK's Practice Statement Letter, the "Sanction Hearing," at which the English court will be asked to approve CB&I UK's Restructuring Plan, is "currently expected to be held on 10 November 2023." Schumann Decl., ¶ 10, ¶ 7, Ex. 1 at ¶ 18.7.

### D.     Overview of the Foreign Restructuring Proceedings

The restructuring procedure that CB&I N.V. has initiated in the Netherlands under the WHOA allows debtors to propose a restructuring plan and to restructure their debts outside formal insolvency proceedings. van den Berg Decl., ¶ 3. Key features of the WHOA procedure include:

- The debtor retains possession of its property and the authority to manage and dispose of its assets. In other words, there is no administrator or supervisor involved, besides the court.

- There is no automatic stay of creditor actions against the debtor upon the initiation of a WHOA procedure.

- The debtor is in charge of offering a restructuring plan. A plan also may be proposed by a court-appointed restructuring expert.

- The debtor can offer the restructuring plan to a number of creditors and shareholders. The WHOA allows the debtor to divide the creditors and shareholders into different classes. Creditors/shareholders in different positions must be placed in different classes.

- Once the restructuring plan is approved by at least one in-the-money creditor class, the debtor (or restructuring expert) can ask the court to bind all affected creditors, regardless of their consent, through a court confirmation of the restructuring plan.

- Under the WHOA, the conditions for binding a dissenting class are, amongst others, that (i) the distribution of the value realized with the plan (*reorganisatiewaarde*) does not deviate, to the disadvantage of the class that did not accept the plan, from its legal ranking or preference, except for the situation that there is a 'reasonable ground' to deviate, and (ii) the plan does give the respective non-secured creditor(s) a right to opt for a cash payment in the amount they would have expected to receive in cash in formal insolvency proceedings (*faillissement*).

van den Berg Decl., ¶ 4.

The restructuring procedure that CB&I UK has initiated in England under Part 26A of the Companies Act 2006 (UK) is similar to the Dutch procedure. Key features of the English procedure include:

- The debtor retains possession of its property and the authority to manage and dispose of its assets. In other words, there is no administrator or supervisor involved, besides the court.

- There is no automatic stay of creditor actions against the debtor upon the initiation of a Part 26A procedure.

- The company, any creditor or shareholder, or any appointed administrator or liquidator may propose a 26A Procedure.

- The applicant must summon a meeting of the relevant creditors or shareholders, or classes of creditors or shareholders, to vote on the restructuring plan.

- The restructuring plan will take effect and become binding on all creditors and shareholders if:

- o   The restructuring plan is approved by 75% in value of the creditors or shareholders (or each class of creditors and/or shareholders) voting at each meeting convened to consider the restructuring plan; or

- o   The court is satisfied that sanctioning the plan would leave none of the members of the dissenting class any worse off than they would be under the relevant alternative to the plan and a number representing at least 75% in value of a class of creditors or shareholders voting at the relevant plan meeting who would receive a payment or have a genuine economic interest in the company in the relevant alternative have approved the plan; and

- o   The restructuring plan is sanctioned by the Court at a specific hearing.

- ●   Once the restructuring becomes effective, it binds the company and all creditors and shareholders, regardless of whether they consented to the plan.

Schumann Decl., ¶¶ 5-6.

## ARGUMENT

To prevent CB&I from avoiding payment of the Award through its foreign "restructuring" gambit, which would result in irreparable harm to Reficar, this Court should (1) enter a prejudgment attachment of CB&I's property in the United States (except for any real property located outside New York State) and (2) order CB&I to disclose its worldwide assets so that Reficar can commence levying upon property that is subject to the attachment order. Alternatively, if this Court promptly enters judgment confirming the Award, Reficar can commence enforcement of the judgment (including post-judgment discovery of CB&I's assets) 30 days after the entry of judgment, or even earlier if the Court so orders under Federal Rule of Civil Procedure 62(a).

The requirements for granting the relief requested in this motion are readily satisfied under the circumstances of this case, as explained below.

11

### A.    Reficar is Entitled to Prejudgment Attachment Under CPLR §§ 6201 and 6212

Prejudgment attachment is available in a federal court "under the circumstances and in the manner provided by the law of the state in which the district court is held." *Cap. Ventures Int'l v. Republic of Argentina*, 443 F.3d 214, 219 (2d Cir. 2006) (internal citation and quotation makes omitted); *see* Fed. R. Civ. P. 64. Under New York law, to obtain a prejudgment attachment, a petitioner must show that: (1) "there is a cause of action"; (2) "it is probable that the plaintiff will succeed on the merits"; (3) "one or more grounds for attachment provided in Section 6201 exist"; and (4) "that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR § 6212(a); *see also In re Amaranth Nat. Gas Commodities Litig.,* 711 F. Supp. 2d 301, 305 (S.D.N.Y. 2010).

Under CPLR Section 6201 ("Section 6201"), "an order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled, in whole or in part . . . to a money judgment" against a defendant, provided that one of the grounds for attachment set out in Section 6201 is met. Section 6201(1) permits prejudgment attachment where "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." New York law permits attachment of "[a]ny debt or property against which a money judgment may be enforced." CPLR § 6202.

In addition to the statutory grounds for prejudgment attachment, the petitioner must show that prejudgment attachment is necessary in order to secure payment of the judgment or to obtain *quasi in rem* jurisdiction over the property of a non-resident defendant. *Cap. Ventures*, 443 F.3d at 221–22.

As explained below, Reficar meets each of these requirements and the Court should grant Reficar's Motion for Order of Prejudgment Attachment. *See In re Amaranth Nat. Gas*

*Commodities Litig.,* 711 F. Supp. 2d at 305-06 ("[W]here a statutory ground for [prejudgment] attachment exists and both need and likelihood of success are established, a district court's discretion does not permit denial of the remedy for some other reason, at least absent extraordinary circumstances and perhaps not even then.") (citing *Cap. Ventures*, 443 F.3d at 222).

### 1. Reficar Has a Cause of Action

"The standard for determining whether a cause of action exists for purposes of attachment under New York law is a liberal one. Unless the plaintiff's papers clearly establish that the plaintiff must ultimately be defeated, a cause of action exists." *Thornapple Assocs., Inc. v. Sahagen*, No. 06 Civ. 6412 (JFK), 2007 WL 747861, at *3 (S.D.N.Y. Mar. 12, 2007) (quoting *Algonquin Power Corp. v. Trafalgar Power*, 2000 U.S. Dist. LEXIS 20331, at *21 (N.D.N.Y. Nov. 8, 2000)).

Here, Reficar seeks confirmation of its Award against CB&I under 9 U.S.C. § 9. Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court," *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984), and the court "must grant" confirmation "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. As discussed further below, the standard for confirmation is a liberal one and the burden on a party seeking vacatur of an award is high. Accordingly, Reficar has a cause of action for purposes of CPLR Section 6212(a).

### 2. Reficar Will Likely Succeed on the Merits of Its Claim

"To show a probability of success on the merits for purposes of an application for an order of attachment, the moving party must demonstrate that it is more likely than not that it will succeed on its claims." *N.Y. Dist. Council of Carpenters Pension Fund v. KW Const., Inc.,* No. 07 CIV 8008 (RJS), 2008 WL 2115225, at *1 (S.D.N.Y. May 16, 2008) (internal citations omitted). The party seeking attachment "must be given the benefit of all legitimate inferences and deductions that can be made from the facts stated." *Considar, Inc. v. Redi Corp. Establishment*, 655 N.Y.S.2d

40, 41 (1st Dep't 1997); *accord JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc*., 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004).

Due to the strong public policy in favor of arbitration, arbitration awards are "subject to very limited review" under the Federal Arbitration Act (9 U.S.C. §§ 1-16). *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016). Only a "barely colorable justification for the outcome reached" by the tribunal is necessary to confirm the award, *Landy Michaels Realty Corp. v. Loc. 32 B-32J Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992), and an award should be confirmed "if a ground for the [tribunal's] decision can be inferred from the facts of the case." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). On the other hand, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *Id.* Unless the party resisting confirmation can show that the award "falls within a very narrow set of circumstances delineated by statute and case law," the award should be confirmed. *See Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co. Ltd*., 57 F.4th 372, 378 (2d Cir. 2023).

Here, the facts and legal standard warrant the (i) denial of CB&I's petition to vacate the Award and (ii) granting of Reficar's cross-petition to confirm the Award. As Reficar has explained in briefing before this Court, none of CB&I's arguments even comes close to identifying the type of fundamental misconduct by the tribunal that could justify vacating the Award or refusing the confirm it. ECF No. 37, pp. 12–32.

The Award provides far more than a "barely colorable justification" for the outcome of the dispute. *See Landy Michaels Realty Corp*., 954 F.2d at 797. After seven years of proceedings, the tribunal unanimously issued a 480-page award. ECF No. 39-1-5 (Award). Based on thousands of pages of pleadings, more than 100 fact witness statements, nearly 30 expert reports, 11 joint expert

reports, and the six-week evidentiary hearing on the merits, the award contains detailed factual findings and legal analysis. *Id.* ¶¶ 122-131. Given that the Second Circuit standard favors confirmation of awards, it is highly unlikely that Reficar's Petition to Confirm the Award will be denied. *See, e.g.*, *BSH Hausgerate, GmbH v. Kamhi*, 282 F. Supp. 3d 668, 675 (S.D.N.Y. 2017) (finding petitioner's presentation of "comprehensive and reasoned Final Award" sufficient to demonstrate that it was more likely than not petitioner would succeed on its claims for purposes of CPLR § 6212(a)); *245 Park Member LLC v. HNA Grp. (Int'l) Co. Ltd.*, No. 22-CV-5136 (JGK), 2022 WL 2916577, at *2 (S.D.N.Y. July 25, 2022) (authorizing prejudgment attachment in proceeding to confirm arbitral award); *Loew v. Kolb*, No. 03 Civ. 5064 (RCC), 2003 WL 22077454, at *2 (S.D.N.Y. Sept. 8, 2003) (granting prejudgment restraint of defendant's assets in connection with petition to confirm arbitral award and noting that "the Court's power to review an arbitration award is severely limited under the Federal Arbitration Act").

### 3.    CB&I N.V. and CB&I UK Are Foreign Corporations Not Authorized to Do Business in New York

CB&I N.V. and CB&I UK are "foreign corporation[s] not qualified to do business in the state" within the meaning of Section 6201(1). CB&I N.V. is a company organized and existing under the laws of the Netherlands, and CB&I UK is a company organized and existing under the laws of England. ECF No. 1, ¶¶ 1, 2. Because neither CB&I N.V. nor CB&I UK is listed in the database of the New York State Department of State Division of Corporations, Stenglein Decl., ¶ 7; Exs, 2-5, they are not "qualified to do business in the state" within the meaning of CPLR § 6201(1). *See In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d at 312 (holding that because a search of the New York State Department of State Division of Corporations database revealed no entries for defendant, a Cayman Islands company, it was not qualified to do business in New York State for purposes of Section 6201(1)).

### 4.   CB&I N.V. and CB&I UK Do Not Allege Any Counterclaims

To obtain an attachment, the plaintiff must show that "the amount demanded from the defendant exceeds all counterclaims known to plaintiff." CPLR § 6212(a). Here, Reficar seeks confirmation of the Award, which orders CB&I N.V. and CB&I UK to pay Reficar $ 937,495,061 (not including interest and costs). In the arbitration, the tribunal did not award CB&I N.V. and CB&I UK any separate damages on its counterclaims. ECF No. 39-1-5 (Award). CB&I N.V. and CB&I UK do not and cannot allege any counterclaims in these confirmation proceedings, and Reficar is unaware of any other counterclaims that CB&I N.V. and CB&I UK could assert against Reficar. Stenglein Decl., ¶ 11.

### 5.   An Attachment Is Necessary as Security for Payment of the Expected Judgment

An attachment is necessary in this matter in order to secure payment of this Court's expected judgment confirming the Award.[5] To show that an attachment is necessary to secure payment of a judgment, the party seeking attachment must "demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment. The risk should be real, 'whether it is a defendant's financial position or past and present conduct.' The court may consider the defendant's history of paying creditors, or a defendant's stated or indicated intent to dispose of assets." *VisionChina Media Inc. v. S'holder Representative Servs.*, *LLC*, 109 A.D.3d 49 (1st Dept. 2013) (citations omitted) (quoting *Ames v. Clifford*, 863 F. Supp. 175, 177 (S.D.N.Y. 1994)).

Here, there is clearly an "identifiable risk" that CB&I N.V. and CB&I UK will not be able to pay or will refuse to pay this Court's judgment confirming the Award. *First*, as explained in the

---

[5]   CB&I N.V. and CB&I UK are already subject to this Court's personal jurisdiction because they commenced this action and because they agreed to arbitrate in this District. Accordingly, an attachment is not necessary to secure *quasi in rem* jurisdiction over their property.

accompanying declarations of Reficar's Dutch and English counsel, a company cannot restructure its debts under Dutch and English restructuring procedures unless it has encountered (or is likely to encounter) financial difficulties that are affecting its ability to carry on its business as a going concern. van den Berg Decl. ¶ 3; Schumann Decl. ¶ 3.[6] *Second*, as discussed above, one of the main objectives of the Foreign Restructuring Proceedings is to discharge CB&I's debt under the Award. Stenglein Decl. ¶ 3; Ex. 1; Schumann Decl. ¶ 3, Ex. 1, 8.4, 10.7-10.11. *Third*, the fact that CB&I N.V. and CB&I UK are non-U.S. companies "increases the likelihood and ease with which [they] could render [themselves] judgment-proof in this jurisdiction." *Herzi v. Ateliers De La Haute-Garonne*, No. 15–cv–7702 (RJS), 2015 WL 8479676, at *3 (S.D.N.Y. Oct. 13, 2015); *see also ITG Ent. Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221 (2d Cir. 1983) ("attachment serves to protect the plaintiff against defendant's ability to pack his bags, abandon his place of convenience within the state, and remain at his permanent residence outside the reach of New York enforcement procedures.").

Even if the goal of the Dutch and English restructuring procedures was not abusive (which it appears to be, because CB&I intends to discharge only Reficar's claims, while protecting the interests of its other creditors and shareholders), these procedures would not eliminate the need for an attachment of CB&I's property in the United States (except for any real property located outside New York State) in order to secure this Court's judgment confirming the Award. As explained above and in the accompanying declarations of Reficar's Dutch and English counsel: (i) there is no automatic stay of creditor actions against CB&I N.V. and CB&I UK during the pendency of

---

[6]   Moreover, as discussed above, CB&I N.V. and CB&I UK only recently exited from Chapter 11 bankruptcy in June 2020. The fact that their current state of severe financial distress is nothing new confirms the high risk that they will not be able to pay this Court's expected judgment confirming the Award.

the Foreign Restructuring Proceedings; and (ii) CB&I N.V. and CB&I UK retain possession of their property and have the authority to manage and dispose of their assets during the pendency of those proceedings.

In these circumstances, an attachment of CB&I's property in the United States (except for any <u>real</u> property located outside New York State) is necessary and essential to secure payment of this Court's expected judgment by preserving and protecting whatever assets Reficar is able to attach.

Where a prejudgment attachment serves a "security function" and a court has personal jurisdiction over a nondomiciliary present in New York, the court also "has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York." *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 312, 926 N.E.2d 1202, 1210, 900 N.Y.S.2d 698 (2010). Thus, even if the situs of the defendant's property is outside New York, the court may order attachment of that property. *Id.*.; *Mishcon de Reya N.Y. LLP v. Grail Semiconductor, Inc.*, No. 11 CIV. 04971 RJH, 2011 WL 6957595, at *6 (S.D.N.Y. Dec. 28, 2011) ("the Court may properly order the attachment of the property of the defendant, 'even if the situs of the property is outside New York'"); *Onewoo Corp. v. Hampshire Brands, Inc*., No. 16-CV-4623 (PKC), 2016 WL 11779677, at *6 (S.D.N.Y. Nov. 15, 2016) (a court may "enforce[e] CPLR 6201(1) as to out-of-state property when defendant was subject to personal jurisdiction in New York"); *Parbulk II AS v. Heritage Mar., SA*, 35 Misc. 3d 235, 238, 935 N.Y.S.2d 829, 831 (N.Y. Sup. Ct. 2011), amended sub nom. *Parbulk II as v. Mar.* (N.Y. Sup. Ct. 2011) ("where the court has personal jurisdiction over the garnishee-defendant, a New York court may order attachment of a debtor's assets held by the garnishee-defendant even if the situs of the assets is outside New York"). However, a New York court cannot order the attachment of <u>real</u> property located outside New

18

York State. *JSC VTB Bank v. Mavlyanov*, 154 A.D.3d 560, 561-62 (1st Dep't 2017). Accordingly, Reficar respectfully requests that this Court order the attachment of CB&I's property in the United States, except for any <u>real</u> property located outside New York State.

### B.   Reficar Should Be Required to Post Only a Minimal Undertaking

CPLR § 6212(b) provides that "[o]n a motion for an order of attachment, the plaintiff shall give an undertaking, in a total amount fixed by the court, but not less than five hundred dollars," to protect and indemnify the defendant "if the defendant recovers judgment or if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property."

Reficar respectfully submits that the statutory $ 500 minimum is appropriate. As explained above, arbitration awards are routinely confirmed and afforded great deference by New York courts. Reficar is highly likely to succeed in this action and to obtain a judgment for the full amount of the Award.

### C.   The Court Should Order Disclosure of CB&I N.V. and CB&I UK's Worldwide Assets Pursuant to CPLR § 6220

Reficar further requests that the Court also order disclosure of CB&I N.V. and CB&I UK's worldwide assets under CPLR § 6220. Such disclosure will enable Reficar (i) to levy upon any assets of CB&I N.V. and CB&I UK that are located in New York, in accordance with CPLR §§ 6214-6216; and (ii) to identify and locate assets of CB&I N.V. and CB&I UK that are located outside of New York so that the Court can order them to bring those assets into the state after it enters judgment confirming the Award, in accordance with CPLR § 5225.

CPLR § 6220 authorizes the Court to order disclosure relating to "any property" in which the defendant has an interest or "any debts" owing to the defendant, "at any time after the granting of an order of attachment and prior to final judgment in the action." N.Y. C.P.L.R. § 6220. The disclosure authorized by CPLR § 6220 "is devoid of expressed territorial limitation." *Michelsen v.*

*Brush*, 233 F. Supp. 868, 869 (E.D.N.Y. 1964). Under § 6220, the Court may order a defendant subject to the Court's personal jurisdiction to disclose information concerning its assets located outside of New York State (including outside the U.S.), because "it is easy to visualize an actual power to coerce the bringing into this state of property under defendant's control that is normally and properly 'located' outside the state." *Id.*

New York federal and state courts regularly exercise their authority under § 6220 to order the disclosure of out-of-state assets (including assets located outside the U.S.). *See, e.g.*, *id.* at 871 (directing that defendant "must respond to inquiry and he may not by assertions of irrelevancy, or by refusing to identify property on the ground of its asserted extraterritoriality, prevent the creation of an objective and real record of evidence"); *Lumbard v. Shasha*, No. 84 Civ 0009 (JFK), 1985 U.S. Dist. LEXIS 12243, at *13 (S.D.N.Y. Dec. 30, 1985) (ordering disclosure under § 6220 of defendant's "personal funds . . . transferred from the domestic brokerage account to a foreign country"); *Martropico Compania Naviera S.A. v. Perushahaan Pertambangan Minyak Dan Gas Bumi Negara*, 396 N.Y.S.2d 410, 411 (1st Dep't 1977) (requiring defendant, Indonesian state-owned oil company, to provide "disclosure regarding out-of-State assets of defendant held by subsidiaries or affiliates of garnishees where the subsidiaries or affiliates are resident of or doing business in the State of New York"). *See also, e.g.*, *Royal Bank & Trust Co. v. Vermes*, No. 85-civ-6944 (JFK), 1986 U.S. Dist. LEXIS 26484, at *8-9 (S.D.N.Y. Apr. 21, 1986) (discovery under § 6220 "need not be limited to the territorial jurisdiction of this Court when the defendant-in-attachment is subject to personal jurisdiction").

At present, Reficar does not know the identity or location of CB&I N.V. and CB&I UK's assets. To make its attachment order and its expected judgment effective, this Court should order disclosure of their worldwide assets under § 6220.

## D.      Conclusion

For the reasons stated above and in the accompanying declarations, Reficar respectfully requests an order of prejudgment attachment to secure payment of this Court's expected judgment, and it requests an order requiring CB&I to disclose its worldwide assets.

Dated: September 25, 2023                         Respectfully submitted,

  /s/ *Mike Stenglein*                    
Mike Stenglein (admitted *pro hac vice*)
Matthew Vandenberg (admitted *pro hac vice*)
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
(512) 457-2000 (telephone)
mstenglein@kslaw.com
mvandenberg@kslaw.com

Adam L. Gray (admitted *pro hac vice*)
KING & SPALDING LLP
Al Fattan Currency House
Tower 2, Level 24
Dubai International Financial Centre Dubai, UAE
971 4 377 9931 (telephone)
agray@kslaw.com

Randy M. Mastro
Thomas C.C. Childs
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
(212) 556-2100 (telephone)
rmastro@kslaw.com
tchilds@kslaw.com

**ATTORNEYS FOR RESPONDENT REFINERÍA DE CARTAGENA S.A.S.**