**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHICAGO BRIDGE & IRON COMPANY
N.V. AND CB&I UK LIMITED,

                   Petitioners,

    v.

REFINERÍA DE CARTAGENA S.A.S.,

               Respondent.

CASE NO. 1:23-cv-04825-GHW

**ORAL ARGUMENT REQUESTED**

**PETITIONERS' RESPONSE TO ORDER TO SHOW CAUSE**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

    A.    Petitioners' corporate history and past reorganization.............................................1

    B.    Petitioners' current financial distress and need to reorganize. ...............................2

    C.    Reficar's creditor status and presence in the restructuring proceedings.................5

ARGUMENT ..........................................................................................................................6

I.    Reficar is not entitled to attachment. ...............................................................................6

    A.    Attachment is unnecessary to secure payment given Petitioners'
            restructuring proceedings............................................................................................8

            1.    Petitioners' reorganizations are legitimate restructurings, filed in
                   good faith, seeking to resolve financial difficulties that extend
                   beyond the threat of the arbitration award. ....................................................8

            2.    Petitioners' restructuring proceedings will protect Reficar's rights,
                   and Reficar has already appeared in both cases to assert them...................8

    B.    Attachment would upend restructuring due process. ...............................................10

    C.    International comity also precludes attachment.......................................................13

            1.    Comity is ordinarily granted to foreign restructuring proceedings............13

            2.    Comity is appropriate here.........................................................................14

    D.    Reficar has not met the statutory requirements for attachment because it is
            unlikely to succeed on the merits of its claim.........................................................17

II.    If the Court grants attachment, it should require an undertaking of at least
    $100 million. .....................................................................................................................19

III.    Reficar is not entitled to disclosure of Petitioners' worldwide assets. ............................20

CONCLUSION......................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Life Ins. Co. v. Linter Grp., Ltd.*,
994 F.2d 996 (2d Cir. 1993)................................................................................14

*Ames v. Clifford*,
863 F. Supp. 175 (S.D.N.Y. 1994)......................................................................11

*Matter of Axona Int'l Credit & Commerce Ltd.*,
88 B.R. 597 (Bankr. S.D.N.Y. 1988)...................................................................16

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
238 B.R. 25 (Bankr. S.D.N.Y. 1999)...................................................................16

*Cap. Ventures v. Republic of Argentina*,
443 F.3d 214 (2d Cir. 2006)...................................................................................7

*Cunard S.S. Co. v. Salen Reefer Services AB*,
773 F.2d 452 (2d Cir. 1985)..........................................................................14, 16

*D.H. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)............................................................................18, 19

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
594 F.Supp.2d 308 (E.D. N.Y. 2009)..................................................................17

*Ecoban Fin. Ltd. v. Grupo Acerero Del Norte, S.A. de C.V.*,
108 F. Supp. 2d 349 (S.D.N.Y. 2000)............................................................13, 17

*Encore Credit Corp. v. LaMattina*,
2006 WL 148909 (E.D.N.Y. Jan. 18, 2006)........................................................21

*Finanz AG Zurich v. Banco Economico, S.A.*,
192 F.3d 240 (2d Cir. 1999)................................................................................14

*Fratelli Italiani, LLC v. Mironova*,
2019 WL 3759160 (S.D.N.Y. Apr. 11, 2019)......................................................20

*Glazer Gottlieb v. Nachman*,
234 A.D.2d 105 (N.Y. App. Div. 1st Dept. 1996)..................................................6

*Hilton v. Guyot*,
159 U.S. 113 (1895)..............................................................................................13

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
43 F.4th 263 (2d Cir. 2022) ...................................................................................7

*ITC Ent., Ltd. v. Nelson Film Partners,*
   714 F.2d 217 (2d Cir. 1983) ............................................................................6

*J.V.W. Investment LTD, v. Kelleher,*
   41 A.D.3d 233 (1st Dep't 2007) ....................................................................12

*JSC VTB Bank v. Mavlyanov,*
   63 N.Y.S.3d 40 (N.Y. App. Div. 2017) ........................................................19

*Landy Michaels Realty Corp. v. Local 32*
   *B-32J,* 954 F.2d 794 (2d Cir. 1992) ..............................................17, 18, 19

*Lane v. Jacobs,*
   2009 WL 1047533 (N.D.N.Y. Apr. 16, 2009) .............................................17

*Loew v. Kolb,*
   2003 WL 22077454 (S.D.N.Y. Sept. 8, 2003) .............................................19

*In re McDermott Int'l,*
   No. 4:20-bk-30336 (S.D. Tex. Bankr.) ...........................................................2

*Moquinon, Ltd. v. Gliklad,*
   2017 WL 1482163 (N.Y. Sup. Ct. Apr. 6, 2017) ........................................19

*Musket Corp. v. PDVSA Petroleo, S.A.,*
   512 F.Supp.2d 155 (S.D.N.Y. 2007) ..............................................................7

*Nanjing Textiles Imp/Exp Corp. Ltd. v. NCC Sportswear Corp,*
   2006 WL 2337186 (S.D.N.Y. Aug. 11, 2006) ...............................................7

*In re P.J. Clarke's Rest. Corp.,*
   265 B.R. 392 (Bankr. S.D.N.Y. 2001) .........................................................11

*Plaintiff Funding Holding, Inc. v. Carrera,*
   2017 WL 7411183 (E.D.N.Y. 2017) ..............................................................6

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,*
   497 F.3d 133 (2d Cir. 2007) ..........................................................................18

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru,*
   109 F.3d 850 (2d Cir. 1997) ..........................................................................13

*Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.,*
   350 F. Supp. 2d 369 (S.D.N.Y. 2004) ..........................................................15

*In re Rubin,*
   160 B.R. 269 (Bankr. S.D.N.Y. 1993) .........................................................15

*Sea Trade Company LTD. v. Fleetboston Financial Corp*,
    2008 WL 161239 (S.D.N.Y. Jan. 15, 2008) ............................................................6

*SummitBridge Nat'l Invs. III, LLC v. Faison*,
    915 F.3d 288 (4th Cir. 2019) ...............................................................................11

*Tempo Shain Corp. v. Bertek, Inc.*,
    120 F.3d 16 (2d Cir. 1997) ...................................................................................18

*In re Third Ave. Transit Corp.*,
    222 F.2d 466 (2d Cir. 1955) .................................................................................11

*Trikona Advisers Ltd. v. Chugh*,
    846 F.3d 22 (2d Cir. 2017) .....................................................................................4

*Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*,
    825 F.2d 709 (2d Cir. 1987) .............................................................12, 13, 14, 16

*Wachovia Secs., LLC v. Loop Corp.*,
    726 F.3d 899 (7th Cir. 2013) ...............................................................................11

*Zapoteco v. Rapi, Inc.*,
    2021 WL 1964548 (E.D.N.Y. May 17, 2021) .......................................................20

**Statutes**

9 U.S.C. § 10 ...............................................................................................................18

9 U.S.C. § 302 .............................................................................................................14

11 U.S.C. § 1501 ...........................................................................................................4

**Rules**

CPLR § 6201 .................................................................................................6, 7, 12, 13

CPLR § 6212 ..................................................................................................................6

CPLR § 6220 .............................................................................................................6, 20

## INTRODUCTION

The Court should deny Respondent's motion for pre-judgment attachment of Petitioners' assets and for wide-ranging discovery of Petitioners' assets anywhere in the world. The show-cause order requested in this Court is but one front in a broader effort, spanning at least two jurisdictions in the United States and the courts of two European countries, to disrupt lawful restructuring processes undertaken by Petitioners in their home jurisdictions. The fact of the matter, undisclosed by Respondent's motion, is that Petitioners have been engaging creditors and stakeholders in order to amend and extend their debt obligations since long before the final award in this case was handed down. Far from being "abusive," Dkt. 61 at 17, "target[ed]," *id.* at 2, or a "foreign 'restructuring' gambit," *id.,* Petitioners' restructuring processes are the lawful and appropriate culmination of months of negotiations with creditors intended to strengthen the capital structure, enhance the liquidity position, and solidify the companies' going-concern prospects.

There can be no allegation that these restructuring processes are unfair or somehow deny Respondent its rights of due process; indeed, Respondent may take up—and is taking up—its opposition in the courts where these restructuring processes are moving forward. But instead, Respondent is trying to undermine those proceedings by coming to this Court with its request for attachment—without regard for the rights of any other stakeholders, priority of interest in the assets, or the authority of the UK and Dutch courts that are administering the processes. Respondent's motion is an attempted end-run, plain and simple. Accordingly, Petitioners respectfully ask the Court to deny these requests.

## BACKGROUND

### A.    Petitioners' corporate history and past reorganization.

Petitioners are foreign entities, incorporated outside the United States, that operate entirely abroad. CB&I N.V. was a company organized under the laws of the Netherlands, with its principal

place of business in The Hague.[1] Dkt. 1 ¶ 1. CB&I UK, as its name suggests, is a company incorporated under the laws of the United Kingdom, *id*. ¶ 2, with its principal place of business in Feltham, which is just outside London.

In 2020, the ultimate parent company of CB&I N.V. and CB&I UK, McDermott International, sought protection under Chapter 11 of the Bankruptcy Code. *See generally In re McDermott Int'l*, No. 4:20-bk-30336 (S.D. Tex. Bankr.). The United States Bankruptcy Court for the Southern District of Texas oversaw those proceedings, which resulted in, among other things, a transfer of the McDermott company group's equity to its financial creditors as well as a restructuring of its debt. Declaration of Travis Brantley ¶¶ 8–12.

**B.      Petitioners' current financial distress and need to reorganize.**

Despite McDermott International's 2020 restructuring, Petitioners—and the McDermott company group more generally—continue to hold substantial debt with secured lenders. That debt stems from a credit agreement the company group entered as part of the 2020 bankruptcy described above. Brantley Decl. ¶¶ 11–16. The credit agreement, sometimes referred to as the Exit Credit Agreement, includes four credit facilities with aggregate principle lending commitments of over $2 billion:

- The "Super Senior LC Facility"
    - Lending Commitments: $743 million
    - Outstanding Debt: $549 million

---

[1]    After a merger and a name change, its successor in interest is McDermott International Holdings B.V., which is also a company organized under the laws of the Netherlands, with its principal place of business in The Hague. Declaration of Teun Struycken ¶ 1. Because CB&I N.V. was the entity listed in the arbitration award, it is a petitioner here, and this brief refers to it rather than its successor in interest.

- The "Make-Whole Term Loan Facility"
  - Lending Commitments: $44.28 million
  - Outstanding Debt: Entirely Drawn

- The "Senior LC Facility"
  - Lending Commitments: $1.176 billion
  - Outstanding Debt: $1.146 billion

- The "Takeback Term Loan Facility"
  - Lending Commitments: $500 million
  - Outstanding Debt: $546 million

Brantley Decl. ¶ 23. Absent extension or amendment, many of these commitments are due in cash in March 2024. *Id*. ¶ 24.

Petitioners are also guarantors for the repayment of additional debt that the McDermott company group has taken on under a financing arrangement known as the "Escrow LC Facility Agreement." *Id*. ¶¶ 25–26. This agreement creates a facility with lending commitments of $371 million, of which $292.1 million is currently drawn. *Id*. The maturity date of the debt is June 30, 2024. *Id*. ¶ 26.

Although McDermott International successfully emerged from the Chapter 11 process in 2020, various events since then have made it a challenge to pay off debts. Brantley Decl. ¶¶ 13–19 (listing financial challenges). The group therefore negotiated the terms of an amendment and extension transaction with over 75% in aggregate of its total secured creditors signing a Transaction Support Agreement on September 8, 2023. Brantley Decl. ¶ 27. This new deal sets out the agreed terms of a restructuring transaction the McDermott company group will implement in part through the UK and Netherlands reorganization processes. *Id*. ¶¶ 27–28. Due to its dire financial state, and to support operations through the expected timeline of the restructuring, just before filing restructuring proceedings, the group borrowed $250 million of new money under a new term loan. Dkt. 58-1 at 2.

To implement the Transaction Support Agreement that is essential to the McDermott company group, Petitioners filed reorganization proceedings in the UK and the Netherlands. Struycken Decl. ¶ 2; Declaration of Hannah Crawford ¶ 2. They did so not to deprive their creditors of what was owed, or, to use Reficar's words, "to target and eliminate [their] debt under the [arbitration] [a]ward…." Dkt. 61 at 2. Instead, Petitioners filed the respective proceedings, which over 80% in aggregate of the group's secured lenders support, to restructure their (and the McDermott company group's) existing debt and to avoid insolvency, financial collapse, and liquidation. Brantley Decl. ¶ 35. Even without the Reficar and Contraloría awards, *see* Dkt. 6 at 5– 12 (background on awards), reorganization would have been necessary, and it would offer creditors a much better return than alternative: liquidation. Brantley Decl. ¶ 35–36. And like other debtors who restructure, Petitioners needed forums in which to resolve all their financial difficulties in a way that was fair to each of their creditors.

In the coming days, Petitioners also intend to petition the United States Bankruptcy Court for the Southern District of Texas for relief under Chapter 15 of the Bankruptcy Code. *See* 11 U.S.C. § 1501. Chapter 15's "primary purpose [is] to facilitate the consolidation of multinational bankruptcies into one single proceeding." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 30 (2d Cir. 2017). It "addressed a persistent problem in cross-border liquidations: creditors [that] initiate[d] multiple bankruptcy proceedings to recover assets from a debtor in jurisdictions other than the site of the principal liquidation." *Id*. "This caused administrative inefficiency and also allowed creditors to bypass the priority restraints of the main bankruptcy proceeding and attempt to recover more than their fair share of the debtor's assets." *Id*. So, "[i]n the interests of uniformity and efficiency, Chapter 15 provides for the coordination of domestic and foreign proceedings into a single bankruptcy and…allows foreign representatives appointed in connection with foreign

proceedings to seek recognition of those proceedings in United States courts as a means of requesting United States assistance in administering the main liquidation." *Id*. Consistent with that purpose and structure, Petitioners will seek recognition of their foreign restructuring proceedings in a U.S. bankruptcy court.

### C.   Reficar's creditor status and presence in the restructuring proceedings.

With respect to Reficar, Petitioners believe the June 2, 2023 arbitration award that gave rise to this case should be vacated. Dkts. 6, 52. If, however, this Court were to ultimately confirm the arbitration award at issue here, Reficar would sit below every class of Petitioners' creditors in the restructuring proceedings but one. The order of priority is as follows: (1) the lenders under the Super Senior LC Facility; (2) the lenders under the Make-Whole Term Loan Facility; (3) the lenders under the Senior LC Facility; (4) the lenders under the Escrow LC Facility; (5) the lenders under the Takeback Term Loan Facility; (6) Reficar and the Colombian government as potential creditors given the arbitration and Contraloría awards; and (7) entities that could be held liable for the Reficar arbitration and the Contraloría award and might have rights of contribution against Petitioners.

Reficar has been an active participant in both the Dutch and English proceedings, including by attending a recent hearing before the English court. Petitioner notified all creditors of the proceedings in early September. Crawford Decl. ¶¶ 17–18; Struycken Decl. ¶ 18. In response, Reficar appeared and subjected itself to the jurisdiction of both foreign courts. In the Netherlands, Reficar has, among other things, informed CB&I N.V. of its intent to initiate a summary proceeding, which is the Dutch equivalent of pre-suit discovery. Struycken Decl. ¶ 23. And in the UK, Reficar was represented by its own counsel; its concerns and intentions to challenge the restructuring plan were heard; and Reficar is conducting and has received discovery. Crawford Decl. ¶ 20.

As the restructuring processes continue, the foreign courts overseeing those proceedings will ensure that Reficar receives the information to which it is entitled so that it can assess its position under the respective restructuring proposals. Those courts will also work to protect the rights and interests of all Petitioners' creditors. Crawford Decl. ¶¶ 6–16 (describing English Restructuring Plans). For example, CB&I UK holds insurance policies that may provide coverage for Reficar's claims, and Reficar has been assured that those policies would transfer by operation of law to Reficar in the UK and Dutch proceedings. *See id.* ¶ 33. Another example is that Reficar will be entitled to receive a payment through the restructuring process if Petitioners and the McDermott company group exceed their forecasted EBITDA targets for 2023 and 2024. *Id.*

**ARGUMENT**

Reficar seeks attachment of Petitioners' US-based assets under New York Civil Practice Law and Rules § 6201 and § 6212 as well as discovery of Petitioners' worldwide assets under § 6220. The Court should deny both requests.

**I.      Reficar is not entitled to attachment.**

Pre-judgment attachment "serves to protect the plaintiff against [a] defendant's ability to pack [its] bags, abandon [its] place of convenience within the state, and remain at [its] permanent residence outside the reach of New York enforcement procedures." *ITC Ent., Ltd. v. Nelson Film Partners*, 714 F.2d 217, 221 (2d Cir. 1983). It is a "harsh" and "extraordinary remedy." *Plaintiff Funding Holding, Inc. v. Carrera*, 2017 WL 7411183, at *4 (E.D.N.Y. 2017). And courts "strictly construe[]" New York's attachment statutes "in favor of those against whom [they] may be employed." *Glazer Gottlieb v. Nachman*, 234 A.D.2d 105, 105 (N.Y. App. Div. 1st Dept. 1996) (internal citations omitted); *see also Sea Trade Company LTD. v. Fleetboston Financial Corp*, 03 Civ. 10254 (JFK), 2008 WL 161239, at *3 (S.D.N.Y. Jan. 15, 2008) ("The provisional remedy of attachment is a harsh remedy which should be construed strictly against those seeking to use it and

6

is discretionary with the trial court.") (internal quotation marks omitted).

To obtain attachment, the party asking for it must, as a threshold matter, show that (1) it has a claim for a money judgment, (2) it's likely to succeed on the merits of its claim, (3) one of the statutory grounds for attachment under NY CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all known counterclaims. *Nanjing Textiles Imp/Exp Corp. Ltd. v. NCC Sportswear Corp*, 06 Civ. 52 (JGK), 2006 WL 2337186, at *4 (S.D.N.Y. Aug. 11, 2006). The party must also demonstrate that attachment is necessary to secure payment of a judgment. *See Cap. Ventures v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006).

Even then, whether to order attachment is ultimately a matter of discretion. *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 270 (2d Cir. 2022). Indeed, it is precisely because attachment is such a harsh remedy that courts must exercise their discretion with care. *See, e.g.*, *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F.Supp.2d 155, 160 (S.D.N.Y. 2007). So even if the statutory requirements for attachment are satisfied, Courts may nonetheless weigh the existence of extraordinary circumstances and, in turn, may decline the attachment request. *Iraq Telecom*, 43 F.4th at 272.

Here, Petitioners' ongoing restructuring proceedings present extraordinary circumstances in which pre-judgment attachment is inappropriate. As a matter of international comity, the Court should defer to the foreign proceedings. And Reficar has also failed to establish the statutory factors for attachment, because it is unlikely to succeed on the merits of its claim.

**A.      Attachment is unnecessary to secure payment given Petitioners' restructuring proceedings.**

    **1.      Petitioners' reorganizations are legitimate restructurings, filed in good faith, seeking to resolve financial difficulties that extend beyond the threat of the arbitration award.**

In seeking special access to Petitioners' assets, Reficar mischaracterizes the restructuring proceedings pending in the Netherlands and the UK as well as its own rights in those cases. It says "CB&I's foreign filings are not normal reorganization proceedings." Dkt. 61 at 2. It claims that Petitioners' "express purpose is to target and eliminate CB&I's debt under the Award, as well as a Colombian regulatory order related to the same construction project." *Id*. It calls the proceedings a "gambit." *Id*. at 2, 2, 11. And it suggests that the decision to reorganize was "abusive." *Id*. at 17. In short, Reficar paints a picture of a nefarious, surreptitious attempt to deprive it—and only it—of money it is owed.

None of that is correct. Petitioners hold obligations to five credit facilities with aggregate lending commitments of over $2.8 billion—of which more than $2.4 billion is currently drawn. Brantley Decl. ¶¶ 23, 25–26. Because Petitioners could not satisfy these obligations on their terms due to the rapidly upcoming maturities of these facilities, Petitioners had no alternative but to seek court-sanctioned restructuring plans in their home jurisdictions. Brantley Decl. ¶ 33–36. Otherwise, they would face insolvency, with no choice but to liquidate. *Id*.

    **2.      Petitioners' restructuring proceedings will protect Reficar's rights, and Reficar has already appeared in both cases to assert them.**

Reficar also professes a need to "bring [Petitioners'] assets into the state after [the Court] enters judgment confirming the Award." Dkt. 61 at 19. But no such need exists when Reficar has already gone to the Netherlands and the UK in pursuit of those assets. In accordance with Dutch and English law, Petitioners notified Reficar of their impending restructuring proceedings. Struycken Decl. ¶ 18; Crawford Decl. ¶ 18. And in response, Reficar did what anyone in its

position might be expected to do: It appeared in both cases to assert its rights. Crawford Decl. ¶ 18; Struycken Decl. ¶¶ 22–23. In both proceedings, the foreign courts will protect Reficar's rights as well.

In the Dutch proceeding, all creditors whose rights will be affected under a restructuring plan are entitled to vote on it. Struycken Decl. ¶ 11. If creditors are not in a comparable position to other creditors, they must be placed in separate classes. *Id*. And a class of creditors is not considered to have consented to a restructuring plan unless the creditors within that class that have voted for the plan hold at least two-thirds of the total amount of claims belonging to the voting creditors in the class. *Id*. If a creditor class votes to reject the restructuring plan, the Dutch court must appoint an independent advisor to monitor the negotiation of the plan. Struycken Decl. ¶ 12. And if one or more creditor classes votes against the plan, the Dutch court may confirm it if:

(i)   the dissenting creditors, if they are small trade creditors, are not scheduled to receive less than 20 percent of the value of their claims, absent compelling grounds for a lower distribution;

(ii)   the dissenting creditors' proposed treatment complies with statutory and contractual priorities, absent a reasonable ground for deviation and the deviation does not disadvantage affected stakeholders;

(iii)   the dissenting creditors, if they are not secured financial creditors, are entitled to a cash distribution greater than or equal to the amount that they would receive if the debtor's assets were liquidated; or

(iv)   the dissenting creditors, if they are secured financial creditors, provided financing to the debtor on a commercial basis and are not limited to distributions only in the form of equity.

Struycken Decl. ¶ 14. Additionally, the Dutch court must decide whether all statutory requirements for the plan are met. Struycken Decl. ¶ 16. The requirements include, among other things, the absolute priority rule, the best interest of creditors test, the likelihood that the debtor will be able to fulfill its obligations under the scheme, and proper notification to creditors. *Id*. These requirements provide due process to Reficar throughout the proceedings.

In the UK proceeding, the court may sanction the restructuring plan only if one of two things occurs. First, a number or creditors representing at least 75% in value of each class must vote in favor of the restructuring plan. Crawford Decl. ¶ 11. Second, if the voting thresholds are not met, the English court must be satisfied that:

    (i)      No member of a dissenting class would be any worse off if the restructuring plan were sanctioned than they would be in the event of the "relevant alternative" (typically an insolvency proceeding such as liquidation); and

    (ii)    At least one class of creditors who would receive a payment, or have a "genuine economic interest" in the company in the event of the "relevant alternative" to the reorganization, agree to the restructuring plan in accordance with the voting threshold referred to above.

Crawford Decl. ¶ 11. Like the Dutch proceeding, these requirements provide due process to Reficar and an adequate vehicle for asserting its rights. Indeed, Reficar has appeared before both the Dutch and the English courts. In the Netherlands, Dutch counsel to Reficar has informed the court that Reficar wishes to be heard in response to CB&I N.V.'s request to appoint an observer. Struycken Decl. ¶ 22. And in the English court, Reficar argued that the proceedings were not urgent, after which the court ordered the 'Sanction Hearing,' at which the court will be asked to approve CB&I UK's proposed restructuring plan, to be held on November 27 instead of November 10. *See* Crawford Decl. ¶ 21.

### B.    Attachment would upend restructuring due process.

In contrast to the restructuring proceedings described above, where all of Petitioners' creditors will be heard, most of the parties who assert claims on Petitioners' limited assets are not present in this case. As outlined above, each of five lending facilities holds secured credit that is senior to Reficar's unsecured claim. Crawford Decl. ¶ 17.

Creditor priority is a fundamental concept in both banking and restructuring. Without it, access to credit would look nothing like it does today. Neither would Petitioners, which benefited

from the four lending facilities that made McDermott's 2020 Chapter 11 reorganization possible. Brantley Decl. ¶¶ 8–13.

That is why courts within this Circuit have recognized the importance of creditor priority. The Second Circuit, for example, has emphasized the Supreme Court's "concern…for the preservation of the rights of creditors, generally, and secured creditors, particularly, against the claims of others standing in a less preferred position." *In re Third Ave. Transit Corp.*, 222 F.2d 466, 469 (2d Cir. 1955). And the Bankruptcy Court for the Southern District of New York has recognized that "payment of interest to an undersecured creditor would effectively constitute payment on the unsecured portion of its debt" which "would frustrate the purpose of the Bankruptcy Code's absolute priority rule, under which payment preference cannot be made to one member of a creditor class over another." *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 406 (Bankr. S.D.N.Y. 2001). Other Circuits have noted the importance of creditor priority as well, such as the Fourth Circuit, which has noted that "a basic tenet of bankruptcy law is that secured creditors are privileged over unsecured creditors." *SummitBridge Nat'l Invs. III, LLC v. Faison*, 915 F.3d 288, 296 (4th Cir. 2019).

Reficar, however, seeks to upend the creditor priority here. Indeed, if the Court were to grant Reficar's request for pre-judgment attachment, Reficar undoubtedly would argue in the restructuring proceedings (or elsewhere) that it had converted its unsecured claim into a secured claim with greater priority than it has today. That is not permitted: "Under the basic principles of secured-transaction law, secured creditors must be paid in full before unsecured creditors retain any interest in a debtor's assets." *Wachovia Secs., LLC v. Loop Corp.*, 726 F.3d 899, 907 (7th Cir. 2013) (internal quotation marks and citation omitted); *see also Ames v. Clifford*, 863 F. Supp. 175, 178 (S.D.N.Y. 1994) ("If plaintiffs' first argument were factually accurate, they would be seeking

to utilize the attachment procedure as a means of obtaining priority over other creditors of Clifford. This is simply not the intended purpose of § 6201."); *J.V.W. Investment LTD, v. Kelleher*, 41 A.D.3d 233 (1st Dep't 2007) ("Under these circumstances, the attachment merely gives plaintiffs an unwarranted priority over SSBT's other creditors, which is simply not the intended purpose of [CPLR] 6201.") (quotation marks omitted).

Worse still, Reficar would have the Court change established creditor priority without notice to, or opportunity to hear from, any of Petitioners' other creditors, most of which hold secured claims. That would run afoul of the requirement that "all claims" be assembled "against the limited assets [of a debtor] in a single proceeding." *Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B.*, 825 F.2d 709, 714 (2d Cir. 1987). The bankruptcy proceedings that are already underway avoid this problem, as full notice has been given and all creditors can assert their claimed rights.

Given these considerations, it is therefore not surprising that courts routinely deny requests for attachment when a bankruptcy proceeding involving the same assets is underway. For example, in *Victrix*, the Second Circuit affirmed vacatur of an attachment in favor of foreign bankruptcy proceedings. 825 F.2d at 711. In the process, the court held that a Swedish bankruptcy was entitled to comity and that the proceeding would fully protect the party that had improperly obtained attachment in the United States. *Id*. at 715 ("Having already filed a claim in the Swedish bankruptcy proceeding, Victrix will enjoy at least the same protection and rights as Salen's other creditors."). Similarly, in *Rashi Textiles, U.S.A., Inc. v. Rhomberg Textil Gesellschaft M.B.H., of Austria*, this Court vacated an attachment and awarded damages. 857 F. Supp. 1051, 1056 (S.D.N.Y. 1994). In doing so, the Court emphasized that like in *Victrix*, the plaintiff had: (1) "attached property in New York after filing a claim in a foreign bankruptcy proceeding"; (2) "attempted to secure two remedies"; and (3) "resort[ed] to the drastic remedy of attachment"

"despite the ongoing foreign proceeding of which they had adequate notice and knowledge." *Id.* at 1055–56.

*Victrix* and *Rashi Textiles* govern the outcome here. Reficar has sought attachment after appearing and participating in Petitioners' foreign restructuring proceedings. Those restructuring proceedings will protect Reficar's rights while also protecting and balancing the rights of Petitioners' other creditors. *See supra* § I.A.2. This Court cannot do the same simply because the other creditors are not here. Instead, the proper forum for any legal proceedings in the United States is a bankruptcy court overseeing a Chapter 15 petition. To further protect the rights of all involved, Petitioners intend to file such a petition in the coming weeks. Thus, for the same reasons that the *Victrix* and *Rashi* courts rejected attempts to attach assets, this Court should deny Reficar's motion.

### C.      International comity also precludes attachment.

#### 1.      Comity is ordinarily granted to foreign restructuring proceedings.

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). Under this principle, "United States courts ordinarily refuse to review acts of foreign governments and defer to proceedings taking place in foreign countries," *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997), so long as "the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy," *Victrix*, 825 F.2d at 713.

Comity has many applications, but it "is particularly appropriate and important with respect to foreign bankruptcy proceedings." *Ecoban Fin. Ltd. v. Grupo Acerero Del Norte, S.A. de C.V.*,

108 F. Supp. 2d 349, 351–52 (S.D.N.Y. 2000), *aff'd sub nom. Ecoban Fin. Ltd. v. Altos Hornos de Mexico, S.A. de C.V.*, 2 F. App'x 80 (2d Cir. 2001). That is because equitable principles demand that all claims against a debtor's limited assets be addressed in a single proceeding. *See Finanz AG Zurich v. Banco Economico, S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) (granting comity to Brazilian liquidation proceeding); *Allstate Life Ins. Co. v. Linter Grp., Ltd.*, 994 F.2d 996, 999 (2d Cir. 1993) (Australian liquidation proceeding); *Victrix*, 825 F.2d at 713–14 (Swedish bankruptcy); *Cunard S.S. Co. v. Salen Reefer Services AB*, 773 F.2d 452, 458 (2d Cir. 1985) (Swedish bankruptcy). American courts therefore "regularly defer to such actions." *Finanz AG*, 192 F.3d at 246.

Because the Court has jurisdiction under 9 U.S.C. § 302, *see* Dkt. 1 at 3, federal law applies to the question of comity. *See*, *e.g.*, *Victrix*, 825 F.2d at 713 (applying federal law to comity question when confirmation of arbitration award was sought under the New York Convention). What matters, then, is whether the Dutch and English courts abide by "fundamental standards of procedural fairness" and whether their proceedings "violate the laws or public policy of the United States." *See Finanz AG*, 192 F.3d at 246 (quotation marks and citation omitted). If fairness is present and no legal or policy issues exist, application of comity is proper. *Id*.

   2.   **Comity is appropriate here.**

Both foreign restructuring proceedings will follow procedures that are fair to all parties involved, and both are free from legal or policy concerns.

*Procedural Fairness*. In the Dutch and English courts, creditors will receive a legitimate opportunity to raise their objections to the restructuring plans being put before the respective courts. Struycken Decl. ¶ 18; Crawford Decl. ¶ 22. Those courts afford creditors avenues through which to raise and address grievances. Struycken Decl. ¶ 18; Crawford Decl. ¶ 22. And nothing in Dutch or English law indicates that the ability of foreign creditors to participate in the process is limited, or that such creditors are otherwise treated differently from local creditors. *See* Crawford

Decl. ¶ 6; Struycken Decl. ¶ 16. Instead, just as a U.S. bankruptcy court would in Chapter 11 proceedings, the Dutch and English courts will gather all creditors whose rights are affected by the restructuring process and will oversee changes to Petitioners' relationships with—and obligations to—each creditor consistent with the rights and order of seniority the creditor holds. Struycken Decl. ¶ 6, ¶ 16; Crawford Decl. ¶¶ 6, 14, 15.

Nothing Reficar complains of changes this result. Reficar questions Petitioners' motives, but it never identifies any aspect of the restructuring procedures that would "violate U.S. standards of fairness." *Rashi*, 857 F. Supp. at 1057 n.7. Nor could it; courts in this Circuit have recognized the fairness of the Dutch and English judicial systems by affording them comity in other cases. *See, e.g.*, *In re Maxwell Commc'n Corp. plc*, 93 F.3d 1036, 1040 (2d Cir. 1996) (holding that "the doctrine of international comity supports deferring to the courts and laws of England"); *Rapture Shipping, Ltd. v. Allround Fuel Trading B.V.*, 350 F. Supp. 2d 369, 375 (S.D.N.Y. 2004) (holding that "the opinion of [a Dutch court] should be respected"); *see also In re Rubin*, 160 B.R. 269, 282 (Bankr. S.D.N.Y. 1993) (showing comity to a proceeding "derived from British law" because "[w]here a foreign proceeding is in a sister common law jurisdiction…exceptions to the doctrine of comity are narrowly construed").

At most, Reficar takes issues with how quickly the restructuring proceedings might move. "CB&I UK expects the 'Sanction Hearing,' at which the English court will be asked to approve CB&I UK's proposed restructuring plan, to be held on November 10, 2023," Reficar says, and in its view that would be "an extraordinarily expeditious resolution." Dkt. 61 at 2. But Reficar was heard in the English court on exactly this complaint, and in response the court set the hearing for November 27. *See* Crawford Decl. ¶ 21. Besides, important proceedings need not drag out for years. Take, for example, the show-cause process here. Attachment would interfere significantly

with Petitioners' ability to reorganize. Yet the briefing and hearing will take just over two weeks from start to finish. Sometimes things need to move quickly, but that does not amount to procedural unfairness—particularly when most UK restructuring proceedings take place within similar timeframes. *See* Crawford Decl. ¶ 14.

In both the Dutch and English proceedings, Reficar may appear, be heard, and pursue its rights just as any other creditor can. Struycken Decl. ¶ 16; Crawford Decl. ¶ 22. The proceedings are therefore fundamentally fair.

*Legal and Policy Concerns*. Rather than conflict with Petitioners' restructuring processes, the relevant laws and policy considerations support deferring to those proceedings. To ensure an "equitable and orderly distribution of a debtor's property," it's necessary to assemble "all claims…in a single proceeding." *Victrix*, 825 F.2d at 713–14. "The granting of comity to a foreign bankruptcy proceeding," then, "enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." *Cunard*, 773 F.2d at 458. And as the Second Circuit has recognized, allowing attachment of a debtor's property in a separate proceeding could jeopardize this interest by allowing the creditor to create "a captive fund to secure any arbitral award it may receive," even though there is "no compelling policy reason for a general creditor whose claim is subject to arbitration to receive a preference over other creditors." *Cunard*, 773 F.2d at 459. Put another way, permitting a "mad scramble…for immediate attachments" would contravene "the established goal of U.S. and international bankruptcy law to preserve assets for equitable distribution for all creditors wherever located." *Matter of Axona Int'l Credit & Commerce Ltd.*, 88 B.R. 597, 604 (Bankr. S.D.N.Y. 1988), *aff'd*, 115 B.R. 442 (S.D.N.Y. 1990). To permit a creditor to "effectively receive a preference by way of the attachment cut[s] against the grain of the Bankruptcy Code…." *In re Bd. of Dirs. of Hopewell*

16

*Int'l Ins. Ltd.*, 238 B.R. 25, 62 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002).

Reficar's issues with the foreign reorganizations sound not in public policy, but in self-interest. It accuses Petitioners of "abusive" restructuring filings meant to "target and eliminate [their] debt under the [arbitration] [a]ward." Dkt. 61 at 17, 2. But motive is irrelevant; what matters is "the foreign court's ability to address, and redress, improper conduct." *Ecoban*, 108 F. Supp. 2d at 353. And in any event, even without the award, Petitioners needed to amend and extend their key financial indebtedness, Crawford Decl. ¶¶ 25–26, and to the extent that process affects Reficar's recovery, it is because Reficar sits behind five classes of secured creditors, all of whom must be paid first, *id.* ¶ 17.

*Result.* As a matter of international comity, the Court should refuse to order attachment and should instead defer to the restructuring proceedings pending in the Dutch and English courts.

### D.    Reficar has not met the statutory requirements for attachment because it is unlikely to succeed on the merits of its claim.

To secure attachment, one of the things Reficar must show is that it will likely succeed on the merits of its claim. *Lane v. Jacobs*, 3:09-cv-0447, 2009 WL 1047533, at *4 (N.D.N.Y. Apr. 16, 2009). But not just any level of probability will suffice; Reficar must be "more likely than not" to prevail. *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 594 F.Supp.2d 308, 319 (E.D. N.Y. 2009).

Reficar has fallen short of its showing. It says all it must do is show a "'barely colorable justification' for the outcome" reached, which it continues, "[t]he Award provides far more than" by spanning 480 pages. Dkt. 61 at 14. But for support, it cites a Second Circuit decision in which (a) the court dismissed the appeal for lack of jurisdiction; (b) both parties to the arbitration agreed that the arbitrator erred in portion of the award that the district court had vacated; and (c) the reference to a "barely colorable justification" came in a discussion of what happens when arbitrators provide no explanation for their ruling. *See Landy Michaels Realty Corp. v. Local 32*

*B-32J Serv. Emps. Int'l Union, AFL-CIO*, 954 F.2d 794, 797 (2d Cir. 1992); *see also* Dkt. 61 at 14 (citing *Landy*).

Reficar also suggests that "an award should be confirmed 'if a ground for the [tribunal's] decision can be inferred from the facts of the case.'" Dkt. 61 at 14. But once more, the case it cites has facts far different than those here. There, an arbitration award was confirmed by way of a default judgment, and on appeal, the Second Circuit held that the motion to confirm the arbitration award should have been "treated as unopposed," while "the motion to vacate should [have been] treated as opposed." *D.H. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

Contrary to Reficar's contention, then, the Tribunal's ruling does not automatically mean the award must be confirmed—or, for purposes of attachment, that Reficar is more likely than not to obtain confirmation. That's because the Federal Arbitration Act and the common law contain grounds for vacating an arbitration award regardless of whether arbitrators explain the ruling well enough. When arbitrators exceed their powers, manifestly disregard the law, or deprive the parties of a fundamentally fair hearing, the resulting award cannot stand. *See* 9 U.S.C. § 10(a); *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 136, 138–140 (2d Cir. 2007) (manifest disregard); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20–21 (2d Cir. 1997) (fundamental fairness). And as CB&I explained in its petition to vacate the award and its response to Reficar's cross-petition to confirm the award, the Tribunal did all three. *See generally* Dkts. 6, 52.

Reficar also suggests that merely because the "Second Circuit standard favors confirmation of awards, it is highly unlikely that Reficar's Petition to Confirm the Award will be denied." Dkt. 61 at 15. But the contours of the confirmation standard say nothing about Reficar's ability to satisfy it—especially when Reficar cites and argues within the wrong standard to begin with.

Unlike the parties in the cases Reficar cites, most of which involved no opposition to confirmation of the arbitration awards at issue,[2] Reficar faces a vigorous opposition with legitimate grounds for vacatur and troubling facts supporting those grounds. Although the Parties chose New York law to govern four of their six contracts, the Tribunal applied Colombian law instead. Dkt. 52 § I.A.1. In the process, the Tribunal used Colombian law to impose on Petitioners a fiduciary duty and to lift the contractual damages cap when New York law prohibited both. *Id*. § I.A.2, § I.A.3. The Tribunal also manifestly disregarded New York and Colombian law when awarding Reficar liquidated damages and actual damages for the same breach. *Id*. § II.B. And the Tribunal considered and relied on evidence from two witnesses whom Petitioners could not cross-examine. *Id*. § III.A. These are just a few of the grounds Petitioners presented for vacating the award, and, applied here, they require Reficar to do far more than cite the award's length and fall back on the (wrong) standard for confirming unexplained awards.

**II.      If the Court grants attachment, it should require an undertaking of at least $100 million.**

When a court orders attachment, it must also set an undertaking that is "rationally related to the potential damages" that would occur if the attachment turned out to be "unwarranted." *JSC VTB Bank v. Mavlyanov*, 63 N.Y.S.3d 40, 44 (N.Y. App. Div. 2017) (quotation marks and citation omitted). The proper calculation includes not only the potential loss of the attached property but also all damages that could "materially and proximately result from the attachment." *Moquinon, Ltd. v. Gliklad*, 58 N.Y.S.3d 874 (Table), 2017 WL 1482163, at *7 (N.Y. Sup. Ct. Apr. 6, 2017).

---

[2]     *See*, *e.g.*, *Gottdiener*, 462 F.3d at 110 ("the motion to confirm should be treated as unopposed"); *Landy*, 954 F.2d at 795 ("both parties agreed that past damages were miscalculated"); *Loew v. Kolb*, No. 03 Civ. 5064 (RCC), 2003 WL 22077454, at *1 (S.D.N.Y. Sept. 8, 2003) ("Despite the Court's order that [respondents] file opposition papers on or before September 2, 2003, [respondents] failed to do so. On September 5, 2003, the Court held a hearing on this matter. Neither [respondents] appeared to contest Petitioner's motion.").

Contrary to Reficar's assertion, the statutory minimum of $500 is not sufficient here. Dkt. 61 at 19. Indeed, as Reficar acknowledges, the purpose of the undertaking is "to protect and indemnify" Petitioners if it is later determined that Reficar "was not entitled to an attachment of [their] property." *Id*. Put another way, what drives the amount of the undertaking is severity of the harm that would occur if attachment were improper.

Here, Petitioners would suffer consequences so serious that any undertaking should be no less than $100 million. Improperly attaching Petitioners' assets would have severe effects on their ability to reorganize. Brantley Decl. ¶ 44. Two foreign restructuring proceedings are well underway, both of which could be disrupted and undermined if Reficar were to succeed in its effort to upend creditor priority. Attachment would also jeopardize the broader deal the McDermott company group struck with its lenders, which includes $250 million of new capital and an extension of the payment periods for its existing debt. Dkt. 58-1 at 1. Restructuring is vital to Petitioners' continued existence. Brantley Decl. ¶ 36. And the alternative is insolvency and liquidation, Brantley Decl. ¶ 37, which benefits no one.

Given the implications of attachment here, the required undertaking should be substantial. Thus, to protect Petitioners, the undertaking should meet or exceed $100 million.

## III.   Reficar is not entitled to disclosure of Petitioners' worldwide assets.

Reficar's request for discovery under CPLR § 6220 should also be denied. First, § 6220 permits discovery only "*after* the granting of an order of attachment." N.Y. C.P.L.R. § 6220 (emphasis added). Because Reficar's request for pre-judgment attachment should be denied, its request for discovery should be denied too. *See, e.g.*, *Zapoteco v. Rapi, Inc.*, No. 20-CV-6335, 2021 WL 1964548, at *4 (E.D.N.Y. May 17, 2021) (denying disclosure under Section 6220 because attachment motion was also denied); *Fratelli Italiani, LLC v. Mironova*, No. 18 Civ. 7013,

2019 WL 3759160, at *13 (S.D.N.Y. Apr. 11, 2019) (same); *Encore Credit Corp. v. LaMattina*, No. CV-05-5442, 2006 WL 148909 at *4 n.2 (E.D.N.Y. Jan. 18, 2006) (same).

Second, Reficar's request is overbroad. Although it seeks attachment of Petitioners' assets in the United States, Reficar nonetheless seeks disclosure of Petitioners' assets across the globe. The justification Reficar gives is that disclosure would "make [the Court's] attachment order and its expected judgment effective." Dkt. 61 at 20. But why disclosure beyond the borders would help an attachment order confined to the United States, Reficar does not say. Nor does it explain why disclosure is necessary at all given the foreign restructuring cases.

Third, Reficar's request is unnecessary. Reficar has appeared in both the Dutch and UK restructuring proceedings and has sought informal and formal discovery there. Struycken Decl. ¶ 23. Petitioners have already begun responding to those requests.

The Court should therefore deny Reficar's request for disclosure.

## CONCLUSION

For these reasons, the Court should find that Petitioners have shown cause, and it should deny Reficar's requests attach their assets and obtain disclosure of their worldwide assets. In the alternative, the Court should set an undertaking of at least $100 million.

Dated: October 4, 2023

Respectfully submitted,

CHICAGO BRIDGE & IRON COMPANY
N.V. and CB&I UK LIMITED,

By their attorneys,

*/s/ Michael F. Williams*

Stephen B. Shapiro
Cheryl A. Feeley
HOLLAND & KNIGHT LLP
800 17TH Street, N.W., Suite 1100
Washington, DC 20006
Telephone: 202.955.3000
stephen.shaprio@hklaw.com
cheryl.feeley@hklaw.com

Stosh M. Silivos
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Telephone: 212.513.3533
stosh.silivos@hklaw.com

Benjamin R. Wilson
HOLLAND & KNIGHT LLP
2929 Arch Street, Suite 800
Philadelphia, PA 19104
Telephone: 215.252.9571
benjamin.wilson@hklaw.com

Michael F. Williams (*pro hac vice*)
Peter A. Farrell (*pro hac vice*)
Candice A. Andalia
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, N.W.
Washington, DC 20004
Telephone: 202.389.5000
michael.williams@kirkland.com

Kevin M. Neylan
Patrick J. Gallagher
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: 212.446-4800

*Attorneys for Petitioners*