**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CHICAGO BRIDGE & IRON COMPANY
N.V. AND CB&I UK LIMITED,

               Petitioners,

     v.

REFINERÍA DE CARTAGENA S.A.S.,

               Respondent.

CASE NO. 1:23-cv-04825-GHW

---

## DECLARATION OF TEUN STRUYCKEN IN SUPPORT OF PETITIONERS' RESPONSE TO ORDER TO SHOW CAUSE

---

I, TEUN STRUYCKEN, hereby declare under penalty of perjury:

1.      I submit this declaration (this "Declaration") in support of Petitioners' Response To Order To Show Cause (the "Motion")[1] on behalf of McDermott International Holdings B.V.[2], successor in interest to Chicago Bridge & Iron Company, N.V., a company incorporated under the laws of the Netherlands and having its registered office in Amsterdam, the Netherlands ("the Dutch Petitioner"). I am a lawyer (*advocaat*) admitted to practice in the Netherlands, and a member of the bar in Amsterdam (*Amsterdamse Orde van Advocaten*). I am a partner at NautaDutilh N.V. in the Netherlands, Dutch counsel to the Dutch Petitioner.

2.      As of the date hereof, the Dutch Petitioner is the subject of a proceeding pending before the District Court of Amsterdam (the "Dutch Court") concerning a restructuring plan (the "WHOA Plan") pursuant to the Dutch Act on Confirmation of Extrajudicial Plans (*Wet Homologatie Onderhands Akkoord*) (the "WHOA" and such proceedings, the "WHOA Proceedings"). In parallel, two of the Dutch Petitioner's affiliates, one incorporated in the Netherlands (Lealand Finance Company B.V. ("LFC")) and one incorporated under the laws of

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

[2]    Effective May 10, 2018, Chicago Bridge & Iron Company, N.V. merged into Comet II B.V., now known as McDermott International Holdings B.V.

England and Wales (CB&I UK Limited, the "English Petitioner") are subject to restructuring proceedings. LFC is the subject of a proceeding pending before the Dutch Court concerning a restructuring plan pursuant to the WHOA (the "LFC WHOA Proceeding"). The English Petitioner is the subject of a proceeding currently pending before the High Court of Justice of England and Wales (the "English Proceeding") concerning a restructuring plan (the "UK Restructuring Plan") pursuant to Part 26A of the Companies Act 2006. The LFC WHOA Proceeding and the English Proceeding are inter-conditional with the WHOA Plan. I have read the separate declaration in support of the Motion in respect to the English Proceeding that will be submitted by Ms. Hannah Crawford.

3.      I have been practicing as a lawyer since 2003, in the fields of asset-based lending, secured transactions and the law of restructuring and insolvency. Prior to 2003, I taught property law and insolvency law at the universities of Tilburg and Nijmegen, the Netherlands. I was educated and did research at the universities of Leiden, Paris, Oxford, Harvard and Stellenbosch. I obtained a doctorate in law (*cum laude*) from the university of Nijmegen for a thesis on the numerus clausus in property law. Aside from being a lawyer, I hold a chair in the university of Utrecht, the Netherlands, and teach secured transactions and insolvency law, as well as private international law (conflicts of laws). At the yearly conference of the ILA (Insolvency Law Association) in London in 2023, I participated in a panel on cross-border recognition of insolvency proceedings. Finally, I am a member of the State Committee for Insolvency Law in the Netherlands.

4.      This Declaration comprises of both statements of legal opinion and statements of fact.  Where the matters stated in this Declaration are statements of legal opinion, such statements represent my view of Dutch law as a practicing lawyer admitted to practice in the Netherlands.

5.      Where the matters stated in this Declaration are statements of fact that are within my personal knowledge, they are true.  Where the matters stated in this Declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information supplied to me and are true to the best of my knowledge, information and belief.

I.       **The WHOA under Dutch Law**

A.       **Dutch WHOA Plan**

6.      The WHOA, introduced in January 2021, was modeled after Chapter 11 of the Bankruptcy Code of the United States and the English Scheme of Arrangement in Parts 26 and 27 of the Companies Act 2006.  The WHOA was slightly amended in order to implement the 2019 EU Restructuring Directive.[3] WHOA proceedings are also listed in Annex A of the EU Insolvency Regulation ("European Insolvency Regulation") as *openbare akkoordprocedure buiten faillissement*.[4] Pursuant to the WHOA, legal entities and natural persons who practice an independent profession or control a business and are reasonably likely to be unable to continue to pay their debts as they become due, may use this statutory type of proceedings to impose a compromise or arrangement, including a restructuring of liabilities, upon some or all creditors.[5] In Dutch restructuring proceedings, all claims against the party seeking to restructure are consolidated in one proceeding. Separate enforcement proceedings against the assets of that party are suspended or terminated.

7.      A WHOA proceeding serves to administer all assets of the estate, wherever those assets are located, and has the effect of discharging or restructuring a company's liabilities.  The WHOA provides debtors with a flexible framework for financial restructurings and a wide range of options to restructure its financial obligations.  For example, the debtor may defer or partially release payment obligations, amend and extend the terms of debt instruments, or offer debt for equity swaps.  A WHOA restructuring plan (*akkoord*) cannot, however, amend the financial claims of employees and pension funds. The fundamental principle of WHOA proceedings is that ranking and priority amongst the creditors are respected.

---

[3]     Directive (EU) 2019/1023 of the European Parliament and of the Council of 20 June 2019 on preventive restructuring frameworks, on discharge of debt and disqualifications, and on measures to increase the efficiency of procedures concerning restructuring, insolvency and discharge of debt.

[4]     Regulation (EU) 2015/848 of the European Parliament and of the Council of 20 May 2015 on insolvency proceedings (recast). This EU Regulation applies in all EU Member States except Denmark.

[5]     A debtor whose restructuring plan was voted down or rejected by the court must wait three years before initiating another restructuring plan.

8.      Further, a WHOA Proceeding may be public or private.  A public proceeding is available to a debtor with a "center of main interests" in the Netherlands or outside of the European Union. A public WHOA proceeding is subject to the European Insolvency Regulation and automatically recognized throughout the European Union (except Denmark). Alternatively, a private WHOA proceeding is available only to a debtor with "center of main interests" in the Netherlands or a "sufficient connection" to the Netherlands.  A "sufficient connection" is assumed when a debtor guarantees the obligations of another debtor over which the court has jurisdiction. Recognition of private WHOA Proceedings will depend on the laws of the states in which recognition is sought. The commencement of public WHOA Proceedings is filed in a generally accessible online register after the court has established jurisdiction; private WHOA Proceedings are not filed in a register. Court hearings in private WHOA Proceedings are in closed session; court hearings in public WHOA Proceedings are open to the public unless the court orders a closed session upon request. In both public and private WHOA Proceedings all information and documents are made available to all parties whose rights are affected by the plan. In neither public nor private WHOA Proceedings will any documents become available to the general public, except for all court judgments, that are published online after anonymization by the court.

9.      Under the WHOA, a proceeding is initiated by a company or creditor of a company filing a declaration (known as a "start declaration") with the court.[6]  Once initiated, the management remains in control of the company (debtor in possession) with its board continuing to manage its business and represent the company throughout the proceedings. A debtor in a WHOA can continue to obtain financing, sell assets, and amend or terminate executory contracts.

10.      The WHOA also provides a debtor with the right to request a stay on enforcement (moratorium, or *afkoelingsperiode*), for a maximum of four months. A moratorium prohibits creditors and third parties from enforcing certain rights against the debtor without court authorization.  Specifically, during the moratorium, (i) creditors and third parties may not reclaim or foreclose on assets, (ii) the debtor may request the court to lift attachments that have been levied over its assets, and (iii) any petition for the opening of bankruptcy proceedings in respect of the debtor is suspended.  The debtor may continue to operate in the ordinary course of business and

---

[6]    The debtor does not need prior approval from its shareholders to file a start declaration regardless of any provisions to the contrary in its organizational documents or any agreements between shareholders.

retain its right to use, consume, or sell any assets of their estate during the moratorium so long as the interests of third parties who have rights in relation to such assets (*i.e.*, secured creditors and their collateral) are adequately protected.

11.     Under the WHOA, a debtor will solicit creditor classes to consent to the restructuring plan. All creditors and shareholders whose rights will be affected under the restructuring plan are entitled to vote and they must be presented with the restructuring plan at least eight days prior to the voting deadline. Creditors whose rights against the debtor are so dissimilar that such creditors cannot be considered to be in a comparable position must be placed in separate classes. A class of creditors is considered to have consented to a restructuring plan if the group of creditors within that class that has voted in favor of the plan represents at least two-thirds of the total amount of claims belonging to the creditors who have cast their vote. There is no requirement that the restructuring plan be approved by a majority in number of creditors.

12.     If a creditor class votes to reject the restructuring plan, an observer must be appointed before the court can decide on a request for sanctioning. An observer is an independent advisor to the court, with the task of monitoring the negotiation of the plan, with special care for the interests of the joint creditors.

13.     A creditor who believes to have a legitimate objection to the restructuring plan should provide a ground for a rejection of sanctioning by the court and must make such objection known to the debtor in a timely manner, i.e. within a reasonable time after it has discovered or reasonably should have discovered the possible existence of that ground for rejection.

14.     If one or more creditor classes votes against the restructuring plan, known as a cross-class cram-down scenario, the court may still confirm the restructuring plan if the following conditions are satisfied:[7]

> a.  the dissenting creditors, if they are small trade creditors, are not scheduled to receive less than 20 percent of the value of their claims, absent compelling grounds for a lower distribution;

---

[7]     A consenting creditors' class cannot affect or impair the rights of a dissenting creditors' class with a higher rank.

b.  the dissenting creditors' proposed treatment complies with statutory and contractual priorities, absent a reasonable ground for deviation and the deviation does not disadvantage affected stakeholders;

c.  the dissenting creditors, if they are not secured financial creditors, are entitled to a cash distribution greater than or equal to the amount that they would receive if the debtor's assets were liquidated; or

d.  the dissenting creditors, if they are secured financial creditors, provided financing to the debtor on a commercial basis and are not limited to distributions only in the form of equity.

15.     Once one creditor class votes to accept the plan, the debtor may request that the court confirm the restructuring plan.  The debtor must submit a voting report to the court within seven days after the deadline for voting.  The debtor will then submit a petition with the court to request confirmation of the restructuring plan, in each case followed by a hearing.  The hearing with respect to the sanctioning, or confirmation, of the restructuring plan is generally held 8 to 14 days later.

16.     The court will determine whether all statutory requirements for the plan and the WHOA Proceedings have been complied with. These requirements include, among other things, the absolute priority rule, the best interest of creditors test, the likelihood that the debtor will be able to fulfill its obligations under the restructuring plan, and proper notification to creditors.  The court will deny confirmation of the restructuring plan if, among other things, it is reasonably likely that the debtor cannot continue to pay its debts if the restructuring plan were implemented, performance of the restructuring plan is not guaranteed, or the debtor seeks new financing as part of its restructuring plan and incurring such financing would disadvantage creditors. Nothing in Dutch law indicates that a foreign creditor like Reficar would be in any way limited or that they would be treated differently from local Dutch creditors.

17.     Immediately upon confirmation of the restructuring plan by the court, the restructuring plan becomes effective and binding upon all creditors, and releases become effective. Without further approval from the court, the obligations of the parties subject to the court order cannot be modified.

63100322 M 53623605

**B.      Status of WHOA Proceedings**

18.      On September 8, 2023, the Dutch Petitioner commenced the WHOA Proceedings by filing the start declarations with the Dutch Court in Amsterdam, the Netherlands. The start declaration includes a request that the WHOA Proceedings shall be public WHOA Proceedings. Shortly thereafter, the Dutch Court provided the Dutch Petitioner with a certified letter of receipt accepting the start declaration which, together with a machine translation thereof, is attached hereto as **Exhibit A**. On September 8, 2023, the English Petitioner issued a practice statement letter regarding the UK Restructuring Plan, in which, among other things, all creditors and shareholders, including Reficar, that will be affected by the restructuring plan proposed by the Dutch Petitioner, were also informed about the WHOA Plan and WHOA Proceedings. On September 29, 2023, the Dutch Petitioner made a draft of the WHOA Plan available for consultation to all creditors and members that will be affected by the WHOA Plan (the "WHOA Creditors"). A copy of the consultation draft of the WHOA Plan is attached to this Declaration as **Exhibit B**. The consultation phase is not required under the WHOA but is aimed at giving all WHOA Creditors more time to assess the WHOA Plan and to raise their concerns and objections. The WHOA Plan will be formally proposed to the WHOA Creditors for voting on or around October 20, 2023. There will be a 14 days voting period, thereby aligning the voting period under the WHOA Plan with the UK Restructuring Plan. After this voting period, which shall be longer that the minimum period required in the WHOA, the Dutch Petitioner will submit a petition to the Dutch Court to request confirming of the WHOA Plan. There will be a hearing at the Dutch Court in respect of the WHOA Plan where all WHOA Creditors including Reficar can raise concerns and objections. It is expected that this hearing will take place on or around November 20, 2023.

19.      The practice statement letter of the English Petitioner and the draft WHOA Plan notified the WHOA Creditors of the Dutch Petitioner's intention to propose the WHOA Plan, the composition of the proposed classes, the method of voting by the WHOA Creditors on the WHOA Plan and the Dutch Petitioner's intention to apply to the Dutch Court for a court order confirming the WHOA Plan.  The WHOA Plan provides for the following classes of WHOA Creditors for purposes of voting on the plan:

        a)       the Super Senior LC Facility WHOA Creditors;

        b)       the Make-Whole Facility WHOA Creditors;

c)      the Senior LC Facility WHOA Creditors;

d)      the Escrow LC Facility WHOA Creditors;

e)      the Takeback Facility WHOA Creditors (together with a) to d), the "Secured WHOA Creditors");

f)      the "Dispute Proceeding WHOA Creditor", a creditor class consisting solely of the Reficar Claim WHOA Creditor; and

g)      the Reficar Contribution Claim WHOA Creditors (together with (f), the "Unsecured WHOA Creditors").

20.     Furthermore, on September 29, 2023, the Dutch Petitioner submitted a request to the Dutch Court to appoint an observer. Separately, one of the WHOA Creditors, Silverpoint / Bracebridge, has submitted a request to the Dutch Court to appoint a restructuring expert. There will be a hearing on Monday October 9, 2023, where both requests will be handled, after which a decision by the Dutch Court to appoint either an observer or a restructuring expert will follow.

21.     The Dutch Petitioner is preparing to submit a request to the Dutch Court to grant a stay on enforcement actions by Reficar in relation to the Reficar WHOA Claim (as defined below), thereby prohibiting Reficar from enforcing their claim against the Dutch Petitioner.

22.     Dutch counsel to Reficar have identified themselves to the Dutch Court in the Dutch Foreign Restructuring Proceedings, and have informed the Dutch Court that they wish to be heard in response to the Dutch Petitioner's request to the Dutch Court to appoint an observer.

23.      On October 3, 2023, Dutch counsel to Reficar notified the Dutch Petitioner's counsel that Reficar plans on initiating summary proceedings, which is the Dutch equivalent of pre-trial discovery.

## II.     The Dutch Petitioner

24.     The Dutch Petitioner is a company incorporated under the laws of the Netherlands (trade register number at the Dutch Chamber of Commerce: 70292019) and along with its debtor and non-debtor affiliates (collectively, the "Group"), provides engineering, procurement and construction services to customers predominately operating in the oil, gas and energy sector. The Dutch Petitioner designs projects for a worldwide client base. The ultimate parent company of the Dutch Petitioner is McDermott International, Ltd.

### III.    Principal Liabilities of the Dutch Petitioner

25.    The Dutch Petitioner's principal indebtedness and liabilities are owed to a mix of secured creditors and unsecured creditors. These liabilities are set out in further detail in paragraph 4 and paragraph 5 of the WHOA Plan. The Dutch Petitioner's principal secured liabilities include (each term as defined in the WHOA Plan):

    a)    the Exit Credit Agreement Facilities, under which approximately $2,463,288,255.73 in principal commitments have been made available to the Group;

    b)    the Escrow LC Facility, which provides for the issuance of up to $303,614,864.29 face amount of letters of credit;

    c)    the Hedging Agreements, under which the Dutch Petitioner's estimated liability is approximately $6,000,000; and

    d)    the Tanks Credit Facilities, under which the whole of a $250,000,000 senior secured term loan facility has been drawn and approximately $254,000,000 senior secured letter of credit facility has been made available.

### IV.    Key terms of the Dutch Petitioner's proposed WHOA Plan

26.    The WHOA Plan is being proposed to compromise the claims of the Secured WHOA Creditors and the Unsecured WHOA Creditors to enable the Dutch Petitioner (amongst other members of the Group) to avoid a possible series of bankruptcy and liquidation proceedings which the Dutch Petitioner considers would result in a worse return for WHOA Creditors, than they will receive as a result of the WHOA Plan. The purpose of the WHOA Plan is to implement a financial restructuring of the Dutch Petitioner, as part of the wider restructuring of the Group, on the terms as described and, where relevant, provided for in the WHOA Plan. It is, in short, intended and anticipated that the following matters will occur as part of the WHOA Plan (as defined in the WHOA Plan):

    a)    implement an amendment and extension of the Group's Secured Credit Agreements, thereby extending the Group's access to critical committed letter of credit facilities and removing the risk of a cash collateralization of outstanding letters of credit in the near term; and

b)      fully compromise and release (*kwijtschelden*) the Reficar WHOA Claim, except that, to the extent necessary, an amount equal to the aggregate amounts recoverable under the Reficar Letter of Credit and under the Insurance Policies (both as defined below) shall remain outstanding under the conditions that such amount shall not be due and payable (*zal niet opeisbaar zijn*) by the Dutch Petitioner and recourse against any of the assets of the Dutch Petitioner shall be excluded.

27.    Specifically, the Dispute Proceeding WHOA Creditor (i.e. Reficar) is given the opportunity to benefit from the potential upside, assuming the successful implementation of the restructuring of the Group, because the WHOA Plan includes an obligation on the Dutch Petitioner to pay the Dispute Proceeding WHOA Creditor a certain upside in the event the Group outperforms its forecasted EBITDA in the financial years 2023 and 2024 (the "Unsecured Creditors WHOA Consideration"). The Unsecured Creditors WHOA Consideration is extensively set out in paragraph 3 of part II of the WHOA Plan.

28.    Considering the conditions affecting the Group, the Dutch Petitioner has been advised that if the Restructuring is not implemented, it will be unable to meet its outstanding and upcoming payment obligations to its creditors and the Group would not have sufficient liquidity to support the Dutch Petitioner in order for it to continue as a going concern. This means that the relevant alternative to the WHOA Plan is the insolvent liquidation of the Dutch Petitioner and subsequent liquidation of the Group. In part 9 of the WHOA Plan is the potential consequences of a failure to implement the Rest extensively set out.

29.    The Dutch Petitioner has been advised that in such a liquidation scenario, the Unsecured WHOA Creditors (including Reficar) would receive de minimis recoveries. In all events, Reficar possesses other rights to recover sums in respect of the Reficar WHOA Claim, which rights are not affected or prejudiced in any way by the WHOA Plan. These include:

a)      a letter of credit issued in the amount of $95,000,000 by the Senior LC Facility Lenders pursuant to the terms of the Exit Credit Agreement (under the Senior LC Facility) in support of the Dutch Petitioner's obligations in connection with, and as security for, the Reficar Claim (the "Reficar Letter of Credit"); and

b)      rights against the Dutch Petitioner's insurers under certain insurance policies which presently benefit the Dutch Petitioner and related Group policyholders (the "<u>Insurance Policies</u>"). The Dutch Petitioner is insured by the Insurance Policies against covered liabilities owing to the Dispute Proceeding Plan Creditors, subject to the remaining cover limit (being $213,000,000) for the sum of all claims and any other defenses or limitations that apply under the Insurance Policies.

63100322 M 53623605

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my information and belief.

Executed on this October 4, 2023

Name: Teun Struycken

Title: partner at NautaDutilh N.V.

12

63100322 M 53623605